Richard **KENNEDY**, Appellant,

v.

**Harold T. ROBB, M.D., and Patrick J. Gannon, M.D., Appellees.**

**No. 76–1170.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1976.

Decided Dec. 30, 1976.

Rehearing and Rehearing En Banc Denied Jan. 21 and 24, 1977.
Stay Denied March 7, 1977.
See 97 S.Ct. 1325.

Francis L. Ruppert (argued), Clayton, Mo., on brief, for appellant.

Karen Iverson, Asst. Atty. Gen., Jefferson City, Mo., argued; Atty. Gen. John C. Danforth (effective Dec. 27th, John D. Ashcroft, Atty. Gen.), and J. Paul Allred, Asst. Atty. Gen., Jefferson City, Mo., on brief, for appellees.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The appellant before us (hereafter "plaintiff"), discharged from his employment by the State of Missouri, asserted in the District Court that he had been deprived of liberty and property without due process under the Fifth and Fourteenth Amendments. The assertions are made because of

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

the manner in which he was discharged from his employment.[1] Upon cross-motions for summary judgment, the District Court held for the defendants. We reverse and remand.

The plaintiff was a nonprobationary employee of the State of Missouri. He had been hired in December of 1968, had served his probationary period, had received thereafter regular promotions, and had ultimately become a Workshop Director at the St. Louis State Hospital Complex. His performance of his duties had been rated consistently satisfactory until May 1, 1975, the date of his eleventh and final service report. In this report, his performance was rated as unsatisfactory. On June 17, he was given a seven page letter from Dr. Gannon, the Superintendent of the St. Louis State Hospital Complex, informing him that he was suspended without pay from such date through June 24, "at which time you are dismissed from employment." The suspension and discharge letter charged plaintiff with discrimination between employees in applying work standards, of harshness to some and leniency to others, of having abused and threatened subordinates, of falsifying his own work records on 37 specific occasions, of failure to comply with Department of Mental Health Operating Regulations, of failure to meet specified deadlines in submitting reports, and, finally, of incompetence in the management of the workshop under his direct charge, all in specific detail.

The letter also told plaintiff that "[y]ou are advised that you may appeal your dismissal to the Missouri Advisory Board providing such appeal is made in writing within 30 days of the effective date of dismissal." No such appeal was perfected, with the result that the Board, set up by the State to entertain discharge appeals as part of a comprehensive administrative process, has never considered the case.[2] The Board has authority, we note, in a proper case, to order reinstatement of an employee with back pay.[3] This action was brought directly in the District Court; plaintiff praying for a mandatory injunction ordering his reinstatement. The District Court, as we have noted, upon cross-motions for summary judgment, entered judgment for the defendants. The plaintiff prosecutes this appeal. He denies the specific charges made[4] and in view of the fact that summary judgment was granted for the defendants, we must accept his version of the facts, Fed.R.Civ.P. 56(c); *Arnett v. Kennedy,* 416 U.S. 134, 139–140, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (plurality opinion).

The plaintiff presents for review two issues. The first is that he has been deprived of liberty and property without due process, relying on the Fourteenth Amendment to the Constitution of the United States.[5]

There is no doubt that procedural due process, whatever its dimensions, is due an employee who demonstrates either a liberty or a property interest in the constitu-

1. Jurisdiction is asserted under 42 U.S.C. §§ 1983 and 1985, as well as 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, "and under the Fifth and Fourteenth Amendments to the Constitution of the United States." Complaint, Paragraph 6.

2. The application of the doctrine of exhaustion of state administrative remedies to § 1983 cases has not been argued to us. *See, generally, Ellis v. Dyson,* 421 U.S. 426, 432–33, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975); *Steffel v. Thompson,* 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Carpenter v. South Dakota,* 536 F.2d 759, 760 n.1 (8th Cir. 1976); *Hartmann v. Scott,* 488 F.2d 1215, 1221–23 (8th Cir. 1973); Comment, *Exhaustion of State Administrative Remedies in Section 1983 Cases,* 41 U.Chi.L.Rev. 537 (1974); Note, *Exhaustion of*

*State Remedies Under the Civil Rights Act,* 68 Colum.L.Rev. 1201 (1968).

3. *See* note 8, *infra.*

4. "Plaintiff has compiled and collected papers, documents and other memoranda, bearing on and directly refuting the allegations contained in exhibit 2 [the letter of discharge] * * *." Complaint, Paragraph 15.

5. The Fourteenth Amendment provides in relevant part:

    [N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *.

tional sense.[6] *Board of Regents v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Buhr v. Buffalo Public School District No. 38*, 509 F.2d 1196, 1199 (8th Cir. 1974). Plaintiff claims both interests. We will first examine the asserted property interest.

With respect to property interest, it is plaintiff's claim that he holds " * * * contractual rights to continuing State employment under formal tenure programs[7]

as well as * * * having a cognizable property interest in continued employment on the basis of a *de facto* tenure program fostered by the State and relied upon * * *." Such property interest, if present, being the creation of the state and not the federal government, *Bishop v. Wood*, 426 U.S. 341, 343–345, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. 2701, we look to the statutes of the the state for its creation and extent. The applicable statutes relative to the issues before us will be found in the margin.[8]

**6.** On the general problems here presented, see the comprehensive and historical discussion, Frug, *Does the Constitution Prevent the Discharge of Civil Service Employees?*, 124 U.Pa.L. Rev. 942 (1976); Merrill, *Procedures for Adverse Actions Against Federal Employees*, 59 Va.L.Rev. 196 (1973); Comment, *Fear of Firing: Arnett v. Kennedy and the Protection of Federal Career Employees*, 10 Harv.C.R.–C.L.L. Rev. 472 (1975).

**7.** It is uncontested that plaintiff is a nonprobationary ("regular") employee. *See* note 9, *infra*.

**8.** V.A.M.S. §§ 36.380 and 36.390 (Supp.1976) provide:

> 36.380. *Dismissal of employee—approval for reemployment, when*
>
> An appointing authority may dismiss for cause any employee in his division occupying a position subject hereto when he considers that such action is required in the interests of efficient administration and that the good of the service will be served thereby. No dismissal of a regular employee shall take effect unless, prior to the effective date thereof, the appointing authority gives to such employee a written statement setting forth in substance the reason therefor and files a copy of such statement with the director. If the director determines that the statement of reasons for the dismissal given by the appointing authority shows that such dismissal does not reflect discredit on the character or conduct of the employee, he may, upon request of the employee, approve reemployment under subsection 7 of section 36.240, in any class in which the employee has held regular status. Any regular employee who is dismissed shall have the right to appeal to the board as provided under section 36.390.
>
> 36.390. *Rights of appeal—regulations concerning appeals and investigations— summary and recommendations required*
>
> * * * * * *
>
> 5. Any regular employee who is dismissed or demoted or suspended for more than three

days may appeal in writing to the board within thirty days after the effective date thereof, setting forth in substance his reasons for claiming that the dismissal, suspension or demotion was for political, religious, or racial reasons, or not for the good of the service. Upon such appeal, both the appealing employee and the appointing authority whose action is reviewed shall have the right to be heard and to present evidence at a hearing which, at the request of the appealing employee, shall be public. At the hearing of such appeals, technical rules of evidence shall not apply. After the hearing and consideration of the evidence for and against a suspension or demotion the board shall approve or disapprove such action and in the event of a disapproval the board shall order the reinstatement of the employee to his former position and the payment to the employee of such salary as he has lost by reason of such suspension or demotion. After the hearing and consideration of the evidence for and against a dismissal the board shall approve or disapprove such action, and may make any one of the following appropriate orders:

> (1) Order the reinstatement of the employee to his former position and the payment to the employee of part or all of such salary as has been lost by reason of such dismissal;
>
> (2) Sustain the dismissal of such employee, unless the board finds that the dismissal was based upon political, social, or religious reason, in which case it shall order the reinstatement of the employee to his former position and the payment to the employee of such salary as has been lost by reason of such dismissal;
>
> (3) Except as provided above the board may sustain the dismissal, but may order the director to recognize reemployment rights for the dismissed employees under subsection 7 of section 36.240, in an appropriate class or classes, or may take steps to effect the transfer of such employee to an appropriate position in the same or another division of service.

The plaintiff, as a "regular employee"[9] of the State was subject to dismissal only "for cause."[10] If dismissed he is entitled to a post-termination[11] evidentiary hearing before the Missouri Personnel Advisory Board.[12] After the hearing, the Board will either approve or disapprove the employee's dismissal.[13] If the Board disapproves the dismissal it shall "[o]rder the reinstatement of the employee to his former position and the payment to the employee of part or all of such salary as has been lost by reason of such dismissal."[14]

We are cited to no controlling opinion of the Supreme Court of Missouri ruling upon the herein-cited statutes with respect to the nature of the property rights, if any, created thereby and our own independent research discloses none.[15] We find no ambiguity in the Missouri statutes.[16] A "regular

---

The Regulations of the State Merit system provide as follows:

13.2 *CAUSES FOR SUSPENSION, DEMOTION AND REMOVAL.*

The following are declared to be causes for suspension, demotion, or removal of any employee in the classified service; however, such actions may be based upon causes other than those herein enumerated, namely, that the employee:

(a) Has willfully violated any of the provisions of the "State Merit System Law" or of the rules of the Personnel Advisory Board made in pursuance thereof;

(b) Is incompetent or inefficient in the performance of the duties of his position (specific instances to be charged);

(c) Has been wantonly careless or negligent in the care of the property of the State;

(d) Has been guilty of abusive or improper treatment toward an inmate or patient of any state institution or to a person in custody; provided the acts committed were not necessarily or lawfully committed in self-defense, to protect the lives of others or to prevent the escape of anyone lawfully in custody;

(e) Has some permanent or chronic physical or mental ailment or defect which incapacitates him for the proper performance of the duties of his position.

(f) Has been habitually tardy in reporting for duty or has absented himself frequently from duty during regular working hours;

(g) Has been convicted of a felony, or of a misdemeanor involving moral turpitude;

(h) Has been guilty of a scandalous and disgraceful conduct while on or off duty where such conduct tends to bring the state service into public disrepute.

9. A "regular employee" is defined as, "an employee appointed to a position in accordance with [the State Merit System Law] after successfully completing a probationary period." V.A.M.S. § 36.020(12) (Supp. 1976).

10. *See* note 8, *supra.*

11. The dismissed employee is required to file his appeal within thirty days after the effective date of dismissal. V.A.M.S. § 36.390 subd. 5 (Supp. 1976).

12. *Id.* The procedural safeguards available to the discharged employee at the post-termination hearing are set forth in greater detail in Merit System Rule 14.3. The discharged employee has "the right to be represented by a duly licensed Attorney." Rule 14.3(a)(2). The Personnel Director or Personnel Advisory Board will issue subpoenas for witnesses or records upon the request of the discharged employee. Rule 14.3(a)(3). The person imposing the disciplinary action on the employee is required to attend the hearing before the Personnel Advisory Board. Rule 14.3(b)(3). Additionally, all witnesses at the hearing must be sworn. Rule 14(b)(6).

13. V.A.M.S. § 36.390 subd. 5 (Supp. 1976).

14. *Id.*

15. The case of *Wolf v. Missouri State Training School for Boys,* 517 S.W.2d 138 (Mo.1974) (en banc), although dealing with a collateral point, may be read to support the view that merit system employees in Missouri may be discharged only for cause, indicating thereby that continued employment is a property right. The *Wolf* court stated, in part:

"Civil service employees * * * by reason of the fact that *their tenure is made stable by the civil service laws and can be ended only under certain prescribed conditions,* are not considered to occupy a position analogous to that of public officers in respect to the question of mitigation of damages simply because of their status as civil service employees." 517 S.W.2d at 143 (quoting 150 A.L.R. 100, 102; emphasis added).

The *Wolf* court also stated:

[Merit System employees] are not public officers. *Their relationship is essentially one of contract. Civil service employees simply have more safeguards built in to protect their tenure in that relationship.* 517 S.W.2d at 143 n.5 (emphasis added).

16. "Where there is no ambiguity in the state statute, the federal court should not abstain but should proceed to decide the federal constitutional claim." *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (citation omitted).

employee" may be dismissed only for cause shown.[17] We are of the opinion that under the applicable statutes and regulations, cited *supra,* the plaintiff had a property interest entitling him to procedural due process.

■ At this point the question presented is what process is "due." *See Greenhill v. Bailey,* 519 F.2d 5, 9 (8th Cir. 1975). No fixed "rules" are applicable. Due process has a flexibility determined by time, place, and circumstances. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

We are not without guidance in this area, both in this circuit and in the Supreme Court. As we held in *Wilderman v. Nelson,* 467 F.2d 1173, 1175 (8th Cir. 1972), "The Fourteenth Amendment * * * compels a pretermination hearing for state employees holding contractual rights to continuing state employment under formal tenure programs * * *." As for the scope and content of the pretermination hearing, the Supreme Court, while noting that "due process tolerates variances in the *form* of a hearing 'appropriate to the nature of the case,'" states that "the Court has traditionally insisted that, whatever its form, opportunity for that hearing must be provided before the deprivation at issue takes ef-

fect."[18] "There are," the Court concedes, "'extraordinary situations' that justify postponing notice and opportunity for a hearing,"[19] but the facts in the case before us disclose nothing of an extraordinary situation. Plaintiff's performance of his duties had been under investigation for a substantial period of time and no emergency is before us.

The case of *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) has been argued to us at length. Although unable to agree on an opinion, it was the holding of the Court that the trial-type evidentiary hearing demanded by the non-probationary federal employee, there before the Court, was not required under the Fifth Amendment. But the Lloyd-La Follette Act[20] under consideration in *Arnett,* unlike the Missouri statute, did provide for an opportunity to file a written answer to the charges made. The *Arnett* Court, however, did not purport to mandate any procedure as essential to the meeting of minimal pretermination due process requirements. What it passed on were existing rules, not the formulation of new ones. The decision thus did not indicate what the result would have been had there been no pretermination safeguards whatever.[21] That is our problem.

---

**17.** It was the conclusion of six members of the court in *Arnett v. Kennedy, supra,* that " * * because the employee could only be discharged for cause, he had a property interest which was entitled to constitutional protection." *Bishop v. Wood, supra,* 96 S.Ct. at 2078 n.8.

*Cf. id.*: "In this case *[Bishop],* a holding that as a matter of state law the employee 'held his position at the will and pleasure of the city' *necessarily established that he had no* property interest." (Emphasis in original.)

**18.** *Fuentes v. Shevin,* 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972) (citation omitted, emphasis in original).

**19.** *Id.* at 90, 92 S.Ct. at 1999 (citation omitted). *See, e. g., Fahey v. Mallonee,* 332 U.S. 245, 253, 67 S.Ct. 1552, 1556, 91 L.Ed. 2030 (1947) (appointment of conservator for federal savings and loan association without prior hearing upheld because of "the delicate nature of the institution and the impossibility of preserving credit during an investigation"); *Central Union Trust Co. v. Garvan,* 254 U.S. 554, 556, 41 S.Ct. 214, 65 L.Ed. 403 (1921) (seizure without prior hearing of enemy property during wartime up-

held); *North American Cold Storage Co. v. City of Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure and destruction of adulterated food without prior hearing upheld because of danger to public health).

**20.** 5 U.S.C. § 7501.

**21.** "Although the question of respondent's federal constitutional right to a hearing *at some time,* in connection with a discharge for cause may already have been resolved in respondent's favor in *Perry v. Sindermann,* 408 U.S. 593 [92 S.Ct. 2694, 33 L.Ed.2d 570] (1972); *Board of Regents v. Roth,* 408 U.S. 564 [92 S.Ct. 2701, 33 L.Ed.2d 548] (1972), and *Arnett v. Kennedy, supra,* the tenured employee's right to a *preremoval* hearing has been determined by this Court only in the context of a statute providing notice and an *opportunity to* respond in writing *before* removal coupled with a full hearing after removal. See concurring opinion of Powell, J., in *Arnett v. Kennedy, supra,* at 164, 170 [94 S.Ct. 1633]."

The several opinions of the Court in *Arnett* have been paralleled in severity by the various circuits in determining the parameters of pretermination due process, all relying on *Arnett*. But since *Arnett* did not purport to decide this issue, we think that dissection of these cases would be fruitless. Each court relies upon its own interpretation of *Arnett*. Guidance, however, may be found in a post-*Arnett* case, *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), wherein it was held that:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[22]

We are thus remitted to the balancing process. The interests of the government in responsible and efficient operation of its processes are clear. The retention of an inefficient or insubordinate employee is harmful not only to the expeditious administration of policy, but is also detrimental to employee morale. On the other hand, we are dealing with the employee's livelihood. Elimination from the payroll may well inflict extreme hardship, possibly, as here, forcing the former employee to reliance upon public aid.[23] Moreover, beyond that, is the factor of human fallibility. Mistake and misinformation are not unknown. Decision makers in discharge cases, as pointed out in *Goss v. Lopez,* 419 U.S. 565, 580, 95 S.Ct. 729, 739, 42 L.Ed.2d 725 (1975),

> frequently act on the reports and advice of others; and the controlling facts and the nature of the conduct under challenge are often disputed. The risk of error is not at all trivial, and it should be guarded against if that may be done without prohibitive cost * * *.

We read the disparate opinions in *Arnett* to agree substantially that the possibility of unjustifiable discharge is to be minimized in any dismissal process. But at no stage in Missouri's pretermination procedure is there an opportunity for the employee to respond to the charges made to the official responsible for making the termination decision. Here we find a significant omission from the procedures passed upon in *Arnett* where the Court rejected the need for an evidentiary trial-type hearing. The regulations ruled upon in *Arnett* provided that "the employee shall have an opportunity to appear before the official vested with authority to make the removal decision in order to answer the charges made against him." [24]

The need at this stage of proposed dismissal is to minimize the employee's risk of wrongful termination, not a decision on the merits. That will come later, before the Advisory Board, with the full panoply of adversary confrontation. It is squarely at this point that plaintiff makes a formidable assertion, namely that he has a right to have his say before he is fired, particularly since in this situation the "issues of credibil-

---

*Boehning v. Indiana State Employees Association,* 423 U.S. 6, 7–8 n., 96 S.Ct. 168, 170, 46 L.Ed.2d 148 (1975) (emphasis in original).

**22.** *See also Cafeteria and Restaurant Workers Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (footnote ours).

**23.** *See* Powell, J., concurring in part in *Arnett, supra,* 416 U.S. at 169, 94 S.Ct. at 1652: "To be sure, even a temporary interruption of income could constitute a serious loss in many instances;" White, J., concurring in part and dissenting in part in *id.* at 194, 94 S.Ct. at 1664: "The impact on the employee of being without a job pending a full hearing is likely to be considerable * * *."

**24.** *Arnett, supra,* 416 U.S. at 143, 94 S.Ct. at 1639, *describing,* 5 C.F.R. § 752.02(b) (Rehnquist, J., plurality opinion; footnote omitted).

ity and veracity * * * play a significant role" [25] in the decision reached.

We thus balance the chance of error, mistake, or bias, resulting in the disastrous termination of employment, against the expense, the delay, and the administrative burden of trial with counsel, testimonial presentations, and the right of cross-examination. It is not without significance in this regard that the Court in *Mathews v. Eldridge, supra,* 424 U.S. at 333–34, 96 S.Ct. at 902, noted that "[i]n only one case, *Goldberg v. Kelly,* 397 U.S. 254, at 266–271 [90 S.Ct. 1011, 1019–1022, 25 L.Ed.2d 287] (1970), has the Court held that a hearing closely approximating a judicial trial is necessary," and continuing, "More recently, in *Arnett v. Kennedy, supra,* we sustained the validity of procedures by which a federal employee could be dismissed for cause. They included notice of the action sought, a copy of the charge, *reasonable time for filing a written response, and an opportunity for an oral appearance.* Following dismissal, an evidentiary hearing was provided." (Emphasis ours.)

■■ The result of the balancing process is our holding that procedural due process requires that the employee before us must be given an opportunity, prior to suspension and discharge, to make a rebuttal to the charges made against him.[26] This, as he argues in his brief, is the minimum which should have been afforded him. Beyond that we do not go. Upon the facts presented we see no substantial or persuasive reason to depart from "the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action." [27] We so hold.[28]

Under the view we have taken of the case we do not reach plaintiff's arguments with respect to the asserted deprivation of "liberty" protected by the Fourteenth Amendment.

■ The remaining problem concerns the matter of remedy. The case is remanded to the District Court for further proceedings. Kennedy on this record did not receive a due process hearing before the administrative officer who made the termination decision. The District Court's order should be tailored to rectifying this defect in procedure. *Cf. Churchwell v. United States,* 545 F.2d 59, No. 76–1674 (8th Cir., 1976). The District Court is directed to fashion an appropriate order which will provide for appellant's reinstatement to his former position, or, if that is unavailable, to a similar or comparable position unless within 30 days of the entry of such order the State of Missouri acting through appellees affords appellant Kennedy an appropriate due process hearing concerning his dismissal before his administrative superior, followed by a right of administrative appeal (*see* note 8) by Kennedy should he feel aggrieved by the final action of his administrative superior.[29]

Reversed and remanded for further proceedings consistent herewith.

---

**25.** *Mathews v. Eldridge, supra,* 424 U.S. at 325, 96 S.Ct. at 898.

**26.** We do not consider, on these facts, the extraordinary situations where summary deprivations are warranted, referred to in *Fuentes, supra,* 407 U.S. at 90–93, 92 S.Ct. 1983, and in note 19, *supra.*

**27.** *Mathews v. Eldridge, supra,* 424 U.S. at 343, 96 S.Ct. at 907.

**28.** *Cf. Johnson v. Mathews,* 539 F.2d 1111, 1120–22 (8th Cir. 1976) wherein we contrasted the need for an evidentiary pretermination hearing in the context there presented with that presented in *Mathews v. Eldridge, supra.* Also to be distinguished upon the procedures mandated, is the case of *Churchwell v. United States,* 545 F.2d 59, No. 76–1674 (8th Cir., 1976) *wherein plaintiff was afforded neither a hearing nor a right to appeal in an alleged invasion of liberty case.* We ordered a full evidentiary hearing on *the merits of her termination.*

**29.** We recognize that if Kennedy is entitled to reinstatement, he is also entitled to back pay. That issue cannot be reached until a determination is made administratively whether Kennedy's dismissal should now be set aside. If that be the case, the Missouri statutes, as we have noted in note 8, provide for reinstatement with back pay.