509 F.Supp. 424 (1981)
Dr. Bhartur N. PREMACHANDRA, Plaintiff,
v.
Dr. Murray G. MITTS et al., Defendants.
No. 81-46 C (2).
United States District Court, E. D. Missouri, E. D.
March 3, 1981.
*425 Marilyn S. Teitelbaum and Tara Levy, Schuchat, Cook & Werner, St. Louis, Mo., for plaintiff.
Anne T. Shapleigh, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., for defendants.

MEMORANDUM
This case is now before the Court on plaintiff's motion for a preliminary injunction. Plaintiff brought this suit pursuant to the Fifth Amendment to the Constitution and 5 U.S.C. § 1101 et seq.[1] Plaintiff seeks to enjoin his dismissal by defendants[2] until he is given a full evidentiary hearing on the charges brought against him. Defendants propose to afford plaintiff such a hearing, but only after his dismissal. Evidence was adduced on plaintiff's motion on January 26, 1981. The following shall constitute this Court's Findings of Fact and Conclusions of Law, as required by Rule 52, Federal Rules of Civil Procedure.
Plaintiff, Dr. Bhartur N. Premachandra, is a Research Endocrinologist employed by the VA Medical Center in St. Louis, Missouri. He has been so employed for the last eighteen years. He is a "career employee" of the VA and can be dismissed only for "cause." 5 U.S.C. § 1101 et seq.
*426 As a Research Endocrinologist, plaintiff's primary responsibility is to plan and conduct research dealing with physiological, biochemical, and immunological activities of the endrocine glands in animals and humans. This research is ultimately relevant to the understanding of genetic, metabolic and other disorders and diseases, as well as the aging process.
Plaintiff conducts this research both independently and in collaboration with other scientists. These collaborators may or may not be affiliated with the VA and are located both locally and around the world.
Plaintiff has had a distinguished career in endocrinological research, and has made substantial contributions in the field. The field is not such, however, that if he was not allowed to continue his research, his prospective contributions would go undiscovered. Rather, it is more likely that someone else would undertake the research plaintiff would have otherwise undertaken, but such research may be delayed substantial periods of time.
Plaintiff conducts his research in a ten room laboratory on the grounds of the VA Medical Center in St. Louis. Approximately three years' effort was necessary when plaintiff began his employment with the VA in order to render this laboratory fully operational. Plaintiff has continually expanded and improved the laboratory throughout his employment.
Approximately one-third of the equipment utilized by plaintiff in this laboratory is owned by the VA. The remainder is owned by Washington University and loaned to plaintiff.
Two VA employees work for plaintiff in this laboratory. Plaintiff supplements these employees' VA salaries with his own funds.
Plaintiff is currently in the midst of several experiments, these experiments having been in progress for a number of months. Daily measurements are required in order to continue these experiments. The results of one of plaintiff's ongoing experiments are expected to be presented at a scientific symposium in a few months. In his experiments, plaintiff uses various serums and blood samples. He also uses laboratory rats, which must be specially acclimatized to plaintiff's laboratory conditions before they can be used.
By letter dated September 16, 1980, plaintiff was notified by defendant J. H. Caldwell, Jr., Regional Director of the VA, that his dismissal had been proposed. This notification specified in some detail the charges against plaintiff.[3] Plaintiff was informed that he had the right to reply to the charges either orally or in writing, and that he could submit affidavits in support of his reply. He was told that the evidence against him was available for his review in the Personnel Office of the Medical Center, and that he was allowed eight hours of official duty time in which to review this evidence. He was also told that his proposed dismissal would not become effective until at least thirty days from the date of the notice. A decision upon the proposed dismissal was promised as soon as possible after plaintiff responded to the charges.
By letter dated October 14, 1980, addressed to defendant Dr. Turner Camp, the Associate Deputy Chief Medical Director of the VA, plaintiff responded to the charges. This reply was lengthy and quite detailed, and leaves no doubt that plaintiff understood the charges. By letter dated October 31, 1980, plaintiff's attorney similarly responded to the charges. Though plaintiff's attorney in this letter requests further specification of certain of the allegations against plaintiff in order that she might more fully respond to these charges on plaintiff's behalf, she responds to the charges in great detail, leaving no doubt that she, too, was fully aware of the *427 charges. In light of this response, the request for further information is properly viewed as nothing more than rhetorical questions. Plaintiff's attorney supplemented her response on November 4, 1980.
By letter dated December 30, 1980, plaintiff was informed by Dr. Murray Mitts, Acting Associate Deputy Chief Medical Director of the VA, that the decision had been made to dismiss him, effective January 16, 1980. Plaintiff was informed of his right to appeal the decision to the Merit Systems Protection Board. Plaintiff subsequently filed such an appeal on January 14, 1981.
By mailgram dated January 9, 1981, plaintiff requested of Dr. Mitts that the dismissal not be made effective until plaintiff received an opportunity for a hearing before the Merit Systems Protection Board. This request was denied.[4]
The Merit Systems Protection Board is empowered to restore plaintiff to his position and award back pay should it subsequently be determined that his dismissal was not justified. There is no assurance, however, as to when a decision by the Board would be forthcoming. In the meantime, plaintiff has been instructed to make arrangements to dismantle and discontinue the operations of his laboratory.
Upon the effective date of his discharge, plaintiff would be required to make arrangements for the return of his equipment to Washington University. Once the equipment is returned to Washington University, it is out of plaintiff's control and there can be no assurance that he would be able to retrieve the equipment should he subsequently be reinstated. The VA has agreed to store this equipment pending the Board's decision, if that arrangement is suitable to Washington University. The VA has indicated that it will take control of the equipment owned by the government presently in plaintiff's laboratory. Should plaintiff be reinstated, the VA would provide him with equipment necessary for his work, though it has not guaranteed that plaintiff would receive the same equipment again.
Likewise, though the VA has assured plaintiff that he will be given appropriate laboratory space for his research should he be reinstated, it can not be guaranteed that plaintiff will again be assigned to this ten room laboratory. Furthermore, it would take many months to again make the laboratory operational.
The two VA employees presently working for plaintiff would be reassigned by the VA. Should plaintiff be reinstated, these employees would be reassigned to plaintiff should they so request.
In dismantling and discontinuing the operation of his laboratory, plaintiff's blood and serum samples would be ruined. Though it is possible to freeze such samples, the scientific validity of future experiments would be undermined by such actions. Some of plaintiff's samples are quite rare and would be difficult to reobtain.
Perhaps most importantly, the many months of research and experimentation invested in plaintiff's ongoing experiments would be wasted if plaintiff was forced to discontinue those experiments pending the outcome of the Board's hearing. Plaintiff would be required to begin these experiments anew after his laboratory was again in operation.
Plaintiff claims that due to these substantial hardships he should be afforded a full hearing prior to the effective date of his dismissal. He claims that subsequent reinstatement with back pay can not compensate for the substantial harm caused by dismantling and discontinuation of his laboratory operations, should the discharge subsequently be found to be wrongful. Plaintiff claims that he has a Due Process right under the Fifth Amendment not to be discharged without a prior hearing, and that defendants have failed to follow the applicable statutory procedures in connection with his discharge.
The Eighth Circuit has recently reviewed the showing necessary to the grant *428 of a preliminary injunction. The Court concluded in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 at 114 (1981) that:
In sum, whether a preliminary injunction should issue involves a consideration of (1) the threat of irreparable harm to the plaintiff, (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.
None of the above factors is necessarily determinative. The determination of whether to grant a preliminary injunction involves a consideration of all these factors. Id. at 113. In effect, the Eighth Circuit has adopted a sliding-scale analysis, in which a strong showing on one criterion may lessen the showing necessary for the others. Cf. State of Texas v. Seatrain International, S. A., 518 F.2d 175 (5th Cir. 1975); Baker v. School Bd. of Marion County, Fla., 487 F.Supp. 380 (M.D.Fla.1980); Schrank v. Bliss, 412 F.Supp. 28 (M.D.Fla.1976). In view of all the evidence, this Court must conclude that plaintiff's request for a preliminary injunction should be denied, due to plaintiff's very slight chance for success on the merits.
Initially, defendants argue that plaintiff has no right to relief since he has not exhausted his administrative remedies. With respect to plaintiff's constitutional Due Process claim, it is hard to see what else plaintiff could have done in the administrative context. He requested a pre-termination hearing, and that request was denied. He obviously can not press his claim for a pre-termination hearing at a post-termination hearing. As to this claim, plaintiff has clearly exhausted his administrative remedies. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
Likewise, plaintiff's failure to exhaust his administrative remedies does not prevent this Court's review of his claim that the proper statutory procedures were not followed. In Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court held that in proper circumstances a federal court may enjoin dismissal of a federal employee pending administrative review of the discharge decision and the procedures followed in reaching that decision. Of course, the failure to exhaust administrative remedies weighs heavily against the grant of a preliminary injunction.
Plaintiff's claim that the applicable statutory procedures were not followed in connection with his discharge has a minimal chance of success. His claim is based on a misreading of the applicable statutes. Plaintiff claims that the procedures set forth in 5 U.S.C. § 4303 were not followed. This section applies only to discharges due to unacceptable performance. There is no claim in this case that plaintiff's performance as a Research Endocrinologist was unacceptable.
Rather, his discharge was due to alleged improprieties unconnected to the quality of his work. As such, the proper statutory procedure is set forth in 5 U.S.C. § 7513. Under this section, plaintiff is entitled to at least thirty days advance written notice of the proposed action against him, specific reasons for the proposed action, an opportunity to respond orally or in writing, the right to be represented by an attorney, and a written decision at the earliest practical date. As stated earlier, defendants fully complied with these requirements in discharging plaintiff.
To the extent that defendants did not respond to plaintiff's attorney's questions, this Court seriously doubts that such was a failure to comply with the VA's regulations which allow the employee to ask for clarification of the charges. As stated earlier, both plaintiff and his attorney exhibited an understanding of the charges, and any reply to the attorney's questions was therefore unnecessary.
Plaintiff's prospects for success on the merits are not substantially greater with respect to his constitutional claim. There can be no doubt that plaintiff has a valid property interest in continued employment. *429 Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); Kennedy v. Robb, 547 F.2d 408 (8th Cir. 1976), cert. denied, 431 U.S. 959, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977). He can be dismissed only for cause, 5 U.S.C. § 1101 et seq., and therefore might validly expect to retain his position until such time as cause for discharge exists. It is, therefore, clear that plaintiff's property interest is entitled to some procedural protection.
In Arnett, supra, however, the Supreme Court upheld the very procedures now involved as adequately protecting a similar employee's property interests. The various opinions in Arnett were summarized in Mathews, supra, 424 U.S. at 334, 96 S.Ct. at 902, as follows:
... More recently, in Arnett v. Kennedy, supra, we sustained the validity of procedures by which a federal employee could be dismissed for cause. They included notice of the action sought, a copy of the charge, reasonable time for filing a written response, and an opportunity for an oral appearance. Following dismissal, an evidentiary hearing was provided.
Likewise, in Robb, supra, the Eighth Circuit held only that the non-probationary state employee was entitled to an opportunity, prior to suspension and discharge, to make a rebuttal to the charges against him. Less than an adversary proceeding was sufficient in this pre-termination stage.
In light of these holdings, plaintiff attempts to distinguish the instant situation on the grounds that more than just an interruption of income is involved. He argues that the continuation of his research is entitled to greater protection than that afforded an uninterrupted flow of income and that more complete procedures are therefore necessary in his case.
Initially, this Court must question the validity of plaintiff's supposition that his research is more valuable than a person's income. Though the harm to his research may, in fact, be more irreparable than the interruption in a person's income, it clearly is no more disruptive of a person's life. Justice Marshall aptly characterized the ruinous effects of a loss of income to the ordinary wage-earner in his dissent in Arnett, supra, 416 U.S. at 220-221, 94 S.Ct. at 1677.
Many workers, particularly those at the bottom of the pay scale, will suffer severe and painful economic dislocations from even a temporary loss of wages. Few public employees earn more than enough to pay their expenses from month to month. Like many of us, they may be required to meet substantial fixed costs on a regular basis and lack substantial savings to meet those expenses while not receiving a salary. The loss of income for even a few weeks may well impair their ability to provide the essentials of life  to buy food, meet mortgage or rent payments, or procure medical services. The plight of a discharged employee may not be far different from that of the welfare recipient in Goldberg [v. Kelly], who, "pending resolution of a controversy ... may [be] deprive[d] ... of the very means by which to live while he waits." 397 U.S. [254], at 264 [90 S.Ct. 1011 at 1018, 25 L.Ed.2d 287]. Appellee, although earning an annual salary of $16,000 before his dismissal, far above the mean salary for federal employees, was nonetheless driven to the brink of financial ruin while he waited. He had to borrow money to support his family, his debts went unpaid, his family lost the protection of his health insurance and, finally, he was forced to apply for public assistance. App. 128 et seq. In this context justice delayed may well be justice denied. [Citations and footnote omitted].
Though plaintiff nobly places his research ahead of the income he derives from it, this is a difference in the nature of the harm, not in the degree.
This Court can not accept the underlying premise of plaintiff's argument, i. e. that the degree of irreparability determines the procedural protections necessary. Though this issue is obviously relevant to the propriety of a preliminary injunction, it does not define the procedural protections afforded by the Due Process clause. Were plaintiff's premise true, a tenured employee with a prospect of back pay upon reinstatement would be entitled to less protection *430 than a similarly tenured employee without a back pay remedy. The appropriate procedural requirements are dictated by the nature of the interest, not the nature of the harm flowing from deprivation of that interest.
This Court does not believe it is appropriate to inspect the particular consequences flowing from each individual employment decision, either as to severity or as to irreparability. The extent of an employee's procedural due process rights can not be made to depend on whether important research will be interrupted, mortgage payments will go unpaid, or financial hardship will lead to marital discord. Any such rule would be unworkable in the real world. "[T]he procedural due process rules are shaped by the risk of error inherent in the truth finding process as applied to the generality of cases, not the rare exception." Mathews, supra 424 U.S. at 344, 96 S.Ct. at 907. This Court therefore believes that this case is indistinguishable from Arnett, supra, and Robb, supra.
In light of plaintiff's minimal chance for ultimate success on the merits, a preliminary injunction is inappropriate herein. Though the balance of hardships may tip in plaintiff's favor, the tip is not so decided as to outweigh the minimal chance for success. Plaintiff's motion for a preliminary injunction will therefore be denied.
NOTES
[1] This Court has jurisdiction of this case under 28 U.S.C. § 1331.
[2] Defendants are numerous officials within the Veterans Administration ("VA"). Their individual identities are generally irrelevant to this proceeding. Where necessary, they will be identified in the text of this opinion.
[3] It is not necessary at this point to discuss the specific charges leveled against plaintiff. The merits of defendants' allegations are irrelevant to this proceeding. Morgan v. Fletcher, 518 F.2d 236 (5th Cir. 1975). Suffice it to say that the charges concern alleged improprieties in the use of outside sources of funding and improprieties in plaintiff's acquisition of blood and serum samples to be utilized in his research.
[4] Plaintiff then brought this suit. At present, plaintiff is still employed by the VA pursuant to this Court's Temporary Restraining Order of January 14, 1981.