**COMMODITY FUTURES TRADING COMMISSION, Plaintiff,**

v.

**ROSENTHAL & COMPANY, et al., Defendants.**

**No. 76C3904.**

United States District Court, N. D. Illinois, E. D.

April 28, 1982.

Dennis A. Dutterer, Kenneth M. Raisler, Helen G. Blechman, Washington, D. C., for plaintiff.

Ralph A. Mantynband, Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Commodity Futures Trading Commission ("CFTC") sued defendants charging their sale of so-called "London commodity options" violated the anti-fraud provisions of the Commodities Exchange Act (such sales have since been rendered wholly illegal by the Futures Trading Act of 1978, 7 U.S.C. § 6c). This Court's January 26, 1982 order dismissed the action without prejudice. Now Leonard Pomerantz, Larry Spatz, Don Braverman, John Dexter and Perry Cracraft have petitioned this Court for attorneys' fees under the newly enacted Equal Access to Justice Act, 28 U.S.C. § 2412 (the "Act"). They have also reasserted a similar claim of much lesser magnitude based on this Court's Local Civil Rule 4 ("Rule 4").

Before this Court would turn to the various substantive issues posed by defendants' application under the Act, the Court asked the parties to brief the threshold question whether the Act applies retroactively to permit recovery of fees generated before its October 1, 1981 effective date.[1] For the reasons stated in this memorandum opinion and order the Court determines the issue is certainly not so clear-cut as to permit rejection of the petition solely on that score. It therefore defers its decision pending full submissions on the merits of the application.

Act subsection (d)(1)(A) reads:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United

---

1. Of the over $575,000 in attorneys' fees and expenses sought by the petition, just $3,500 was incurred for services after October 1, 1981.

States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Its effective date is provided for in the note following 5 U.S.C. § 504:

> This Title and the amendments made by this Title . . . shall take effect on October 1, 1981, and shall apply to . . . any civil action . . . pending on, or commenced on or after, such date.

Only two opinions cited by the parties have addressed the retroactivity question directly. Each held the Act permits recovery of *all* attorney's fees generated by an action, so long as it was pending October 1, 1981. *Photo Data, Inc. v. Sawyer*, 533 F.Supp. 348 (D.D.C.1982); *Berman v. Schweiker*, 531 F.Supp. 1149 No. 80 C 2737 (N.D.Ill.1982). Neither however considered the sovereign immunity argument advanced by the government here.

Certainly the *Photo Data* and *Berman* reading of the Act is a reasonable—perhaps even the normal—one. It proceeds from the dual premise that:

> (1) All actions pending October 1, 1981 are covered by the Act.
>
> (2) Awards under the Act are for "fees and other expenses . . . incurred . . . in any civil action (other than cases sounding in tort) brought by or against the United States. . . ."

There is no language *specifically* limiting awards to fees incurred before the October 1, 1981 date.

But that reading is not the only permissible one. It could be reached if the effective date provision contained only its last clause, the one stating the Act "shall apply to . . .

any civil action . . . pending on" October 1, 1981. It thus might be said to treat the *earlier* clause ("This Title and the amendments made by this Title . . . shall take effect on October 1, 1981. . . .") as surplusage. Under familiar rules of construction statutes are to be read, if possible, to give meaning to all their provisions. 2A D. Sands, *Sutherland Statutory Interpretation* § 46.06 (rev. 2d ed. 1973). And one rational reading of the "take effect" clause would be to apply it to the "fees . . . incurred" language of the Act, so that the allowance would extend only to "fees . . . incurred" after the Act "shall take effect on October 1, 1981."

■ Sovereign immunity, though there have been many statutory inroads on its once-universal scope, remains a viable doctrine. *See* this Court's opinion in *Edmondson v. Simon*, 87 F.R.D. 487, 490 (N.D.Ill. 1980). One concomitant of the doctrine is that statutes waiving sovereign immunity are narrowly construed, requiring a clear showing of congressional intent, *Lehman v. Nakshian*, 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548 (1981): [2]

> Like a waiver of immunity itself, which must be "unequivocally expressed," *United States v. Mitchell, supra*, [445 U.S. 535] at 538, [100 S.Ct. 1349 at 1352, 63 L.Ed.2d 607] quoting *United States v. King*, 395 U.S. 1, 4, [89 S.Ct. 1501, 1502, 23 L.Ed.2d 52] "this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."

*See* also, applying like principles to fee award statutes, *Fitzgerald v. United States Civil Service Comm'n*, 554 F.2d 1186 (D.C. Cir.1977); *Nibali v. United States*, 634 F.2d 494 (Ct.Cl.1980).

This is not to say that the Court necessarily espouses the CFTC position. However, petitioners have left unanswered questions

**2.** When *Edmondson* was written this Court aligned itself with the dissenting opinion by Judge Tamm in *Nakshian v. Claytor*, 628 F.2d 59, 65 (D.C.Cir.1980). Thereafter the Supreme Court reversed the Court of Appeals, reaching the same conclusion as Judge Tamm's dissenting position and *Edmondson*.

posed by CFTC.[3] At the least further inquiry is necessary before a definitive decision may be reached. In addition, requiring the parties to proceed to the merits may more readily resolve (or avoid) the issue:

(1) If CFTC brings itself within the Act's "unless" provisions—if its "position . . . was substantially justified" or if "special circumstances make an award unjust"—the retroactivity issue would become moot.

(2) Interim case law development may cast further light on the problem.

Accordingly the Court reserves judgment on the retroactivity issue. CFTC is directed to file a memorandum addressed to the possible applicability of the "unless" provisions, and petitioners are directed to file a reply memorandum on the same subject, on a schedule to be established by the Court at the April 28, 1982 status hearing. Briefing on the reasonableness of the requested fees and expenses (if allowable at all) will continue to be deferred.

This opinion now turns to defendants' long-deferred motion under Rule 4, which provides:

**Counsel Fees on Taking Depositions in Certain Cases**

(a) When a proposed deposition upon oral examination, including a deposition before action, or pending appeal, is sought to be taken at a place more than 150 miles from the courthouse, the court may provide in the order therefor, or in any order entered under Federal Rule of Civil Procedure 30(b), that prior to the examination the applicant pay the expense of the attendance at the place where the deposition is to be taken of one attorney for the adversary party or parties, or expected party or parties, including a reasonable counsel fee. The amounts so paid shall be a taxable cost in the event that the applicant recovers costs of the action or proceeding.

On December 3, 1976 all defendants applied under Rule 4 for expenses stemming from a large number of depositions noticed by CFTC. Judge Crowley (then presiding over this action) refused to award expenses but entered and continued the motion so defendants could raise it at a later date. Defendants now seek reimbursement for expenses (including counsel fees) generated by some 70 depositions taken more than 150 miles from the courthouse.

CFTC argues that as a governmental entity it cannot be taxed expenses unless there has been an express waiver of sovereign immunity. It contends Rule 4 is not such a waiver and cannot therefore provide a basis for assessing expenses.

Two holdings in *EEOC v. Kenosha Unified School District No. 1*, 620 F.2d 1220, 1226–27 (7th Cir. 1980) cast substantial light on the problem:

Acting under Fed.R.Civ.P. 37(a), the district court in *Kenosha* had (a) barred testimony of an EEOC witness because EEOC failed to produce certain reports and (b) awarded expenses (including attorney's fees) incurred in filing a motion to compel against EEOC. Based on sovereign immunity, our Court of Appeals upheld the preclusion of testimony but reversed the award of expenses.

In addition the district court had utilized a local rule much like Rule 4 to require EEOC to pay expenses incurred by the opposing party in preparing a statistical analysis. On that score our Court of Appeals held, on sovereign immunity grounds, the local rule was insufficient *by itself* to assess expenses. However the Court upheld the award because it found a sufficient waiver

---

3. Perhaps most notably, CFTC points to the cost estimates submitted by the Congressional Budget Office when the Act was before Congress, H.R.Rep. 96–1418, 96th Cong. 2d Sess. at 21 24 (1980), reprinted in 5 U.S.Code Cong. & Ad.News 5000 03. CBO projected the legislation would cost an estimated $92 million in fiscal 1982, $109 million in fiscal 1983 and $129 million in fiscal 1984. CFTC argues with at least surface persuasiveness that were the Act contemplated to be retroactive as to all fees incurred in all cases pending at the beginning of fiscal 1982 (October 1, 1981), that progression of projected expense would be illogical. This Court should be provided with more input (if available) as to the factual predicate for CBO's projections.

of sovereign immunity in Section 2412 (as it then existed), *id.* at 1227–28.

 Under *Keonsha*'s teaching, expenses cannot be assessed against the government *solely* on the basis of a local rule or a Federal Rule of Civil Procedure that speaks only in general terms.[4] But in view of Section 2412 the *Kenosha* Court eventually awarded the cost of the statistical analysis "as an appropriate exercise of its equity powers under Local Rule 9.02(d)." *Id.* at 1228. Thus the briefing already ordered in this opinion should also discuss the extent to which defendants' renewed motion is or is not controlled by the same standards expressed in the "unless" provisions of the Act.

---

**4.** Any local rule that would *specifically* purport to permit an assessment against the government would appear to be subject to the same infirmity. Neither *Kenosha* nor this opinion, however, addresses the question whether a Federal Rule of Civil Procedure to the same effect (given Congress'—but not the President's—participation in promulgating such Rules) could waive sovereign immunity.