Dr. Bhartur N. PREMACHANDRA,
Appellee,

v.

Dr. Murray G. MITTS, etc., et
al., Appellant.

No. 82–2441.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 15, 1983.

Decided Feb. 9, 1984.

Rehearing and Rehearing En Banc
Granted April 18, 1984.

Marilyn S. Teitelbaum, Sally E. Barker, Schuchat, Cook & Werner, St. Louis, Mo., for appellee.

Thomas E. Dittmeier, U.S. Atty., St. Louis, Mo., J. Paul McGrath, Asst. Atty. Gen., William Kanter, Anne Buxton Sobol, Nicholas S. Zeppos, Attys., Civ. Div., Dept. of Justice, Washington, D.C., for appellants.

Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The Veterans Administration (VA) appeals the district court's * award to plaintiff, Dr. Bhartur N. Premachandra, of $15,630.67 in attorneys' fees and $1,848.49 in expenses under 28 U.S.C. § 2412 (Equal Access to Justice Act) and 42 U.S.C. § 1988 (Civil Rights Attorneys' Award Act). The VA contends the plaintiff was not eligible for attorneys' fees because: (1) plaintiff was not a "prevailing party"; (2) plaintiff's suit was not brought pursuant to any civil rights provision enumerated in 42 U.S.C. § 1988; and (3) sovereign immunity bars awards of fees for attorney time expended before the October 1, 1981 effective date of the EAJA. We reject these contentions and affirm the award of attorneys' fees, but reduce the amount of the fee to $10,000.

## I. Background

Plaintiff is a research endocrinologist employed by the VA for the past eighteen years. On December 30, 1980, the VA notified plaintiff of his termination effective January 16, 1981, and also directed him to end his experiments and dismantle his laboratory by that date.

Plaintiff's response was two-fold. First, he appealed his termination to the Merit Systems Protection Board (MSPB). Second and most relevant to this appeal, he filed suit in federal district court seeking an order enjoining the VA from terminating him and from requiring him to dismantle his laboratory, until he received a due process hearing before the MSPB. Plaintiff claimed that he was entitled to a pretermination hearing under the 5th Amendment to prevent possible irreparable harm to his laboratory research and experiments.

The district court, 548 F.Supp. 117, initially granted plaintiff a temporary restraining order, but then later denied him a preliminary injunction. The court found that plaintiff may be irreparably injured by the dismantling of the laboratory, but nevertheless concluded that this potential hardship was outweighed by plaintiff's slight chance of success on the merits. Relying principally on *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the court rejected plaintiff's contention that the continuation of his laboratory research entitled him to a pretermination/predismantling due process hearing under the 5th Amendment. *See Premachandra v. Mitts,* 509 F.Supp. 424, 428–30 (E.D.Mo.1981).

The district court also denied plaintiff's application for an injunction pending appeal, as did the Eighth Circuit and the Supreme Court. Plaintiff later submitted a second motion for injunction pending appeal to the Eighth Circuit, this time seeking an order prohibiting the VA from dismantling his laboratory or disrupting his experiments, but permitting the VA to terminate his employment prior to the due process hearing before the MSPB.

In response to this second motion, and to the VA's expressed willingness not to disrupt the plaintiff's laboratory pending appeal, the Eighth Circuit entered an order to stay the VA's dismantling of plaintiff's laboratory pending oral argument before the Eighth Circuit. This stay did not extend to plaintiff's employment and so the VA subsequently terminated plaintiff's salary but permitted him to continue working in the laboratory.

* Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

Oral argument on plaintiff's appeal from the district court's denial of his request for preliminary injunction was held before the Eighth Circuit on June 15, 1981. However, the Eighth Circuit never ruled on the merits of this appeal because, in a letter to the court, dated July 2, 1981, the VA agreed "not to dismantle or interfere with [plaintiff's] use of the laboratory before the decision on the merits of [his] discharge is filed by the [MSPB] Hearing Examiner." This agreement permitted plaintiff to remain in the laboratory until the MSPB ruled on the validity of his discharge. On October 26, 1981, the Board issued a final decision reversing the VA's termination of plaintiff. As a result, the Eighth Circuit dismissed as moot plaintiff's appeal of the denial of his motion for a preliminary injunction.

Following these decisions by the Eighth Circuit and the Board, the plaintiff sought and obtained attorneys' fees in connection with the discharge proceedings before the Board.[1] The plaintiff also asked the district court to award reasonable attorneys' fees he incurred in the preliminary injunction litigation, pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412(b). In awarding attorneys' fees of $15,630.67, the district court interpreted § 2412(b) in conjunction with 42 U.S.C. § 1988 to make federal defendants, like the VA, liable to a prevailing party for attorneys' fees incurred in a suit for the vindication of civil rights. The court then, applying the *Nadeau*[2] two-part test, concluded that plaintiff was a "prevailing party" in this litigation because: 1) his lawsuit served as a "catalyst" to the VA's agreement not to disrupt plaintiff's laboratory pending disposition of his case before the Agency; 2) his lawsuit was rea-

sonable, as evidenced by plaintiff's eventual success before the MSPB. In calculating the award, the court reduced by one-third the number of compensable hours to reflect the fact that plaintiff was unsuccessful in attempting to enjoin the VA from terminating his employment prior to his hearing before the Board. The court therefore awarded attorneys' fees of $15,630.67 and expenses of $1,848.49 for a total of $17,431.16.

## II. Prevailing Party

The threshold issue in this case is whether the district court erred in finding that plaintiff was a "prevailing party" under § 2412 (EAJA) and therefore entitled to attorneys' fees. Although the EAJA does not define the term "prevailing party", the legislative history clearly indicates that the term is to be read consistently with its use in other fee shifting statutes. *See* H.R. Rep. No. 96–1418, 96th Cong., 2nd Sess. 11 (1980), *reprinted in* 1980 U.S.Code Cong. & Ad.News 4984, 4990.[3] Recently, the Supreme Court stated that "plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit". *Hensley v. Eckerhart,* —— U.S. ——, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983), *quoting, Nadeau,* 581 F.2d at 278–79. "Prevailing party", however, is not limited to a "victor" only after entry of final judgment following a full trial on the merits; a party may be considered to have prevailed through a favorable settlement of a case or consent agreement, even if he does not ultimately prevail on all issues.[4] *United States*

---

1. In awarding attorney's fees, the Board concluded that the VA "should have known that [plaintiff's] separation could not have been sustained" and that "[w]hether the [VA's] recklessness or heedlessness was precipitated by ill-will or bad faith, the facts of this case clearly show that had the [VA] prudently made reasonable inquiry it would have and certainly should have ascertained at the outset the charges against the plaintiff were without merit."

2. *Nadeau v. Helgemoe,* 581 F.2d 275, 281 (1st Cir.1978).

3. *See also Hensley v. Eckerhart,* —— U.S. ——, —— n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40, 50 n. 7. (1983); *Northcross v. Memphis Bd. of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (similar attorneys' fee provisions should be interpreted *pari passu* ).

4. The legislative history of the EAJA states: [t]he phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case ...

ex rel. Heydt v. Citizens State Bank, 668 F.2d 444, 447 (8th Cir.1982); United States v. 329.73 Acres, Grenada and Yalobusha, 704 F.2d 800, 808–09 (5th Cir.1983) (en banc); Doe v. Busbee, 684 F.2d 1375, 1379 (11th Cir.1982).

While the parties agree on the law generally, they disagree on the proper standard for determining "prevailing party" where, as here, the defendant's voluntary compliance with plaintiff's requested relief moots the lawsuit. The VA contends the appropriate standard is the two-part test announced in Nadeau v. Helgemoe, 581 F.2d 281, and applied by the district court. The first step under Nadeau requires a court to determine, as a factual matter, whether the plaintiff's suit served as a catalyst—i.e., "a necessary and important factor"—in achieving the relief desired. This first step presents no dispute here; both parties agree on the necessity of a "catalyst" inquiry and the VA does not contest the district court's finding that the plaintiff's lawsuit served as a catalyst[5] in bringing about plaintiff's desired relief—i.e., maintenance of his laboratory pending the Board's disposition of the underlying appeal. Assuming plaintiff's suit was a catalyst, the second part of Nadeau requires a court to make the legal determination whether plaintiff's suit was so "frivolous, unreasonable, or groundless" that the defendant's voluntary compliance with plaintiff's desired relief may be considered "gratuitous." Id.

As noted by the district court and the VA, the Eighth Circuit adopted both parts of Nadeau's two-part test in United Handicapped Federation v. Andre, 622 F.2d 342, 346–347 (8th Cir.1980), a case which, like Nadeau, involved relief through a settlement agreement. The plaintiff nevertheless contends that the second part of Nadeau—asking whether plaintiff's suit was "reasonable"—is inapplicable in cases of voluntary compliance. In support, plaintiff relies on Parham v. Southwestern Bell Telephone, 433 F.2d 421, 429–30 (8th Cir.1970) and Williams v. Miller, 620 F.2d 199, 202 (8th Cir.1980) (per curiam).

We are compelled to apply the "reasonableness" prong of Nadeau, as the court did in United Handicapped. First, the Parham court's failure expressly to apply the "reasonableness" prong of Nadeau was understandable since Parham preceded Nadeau by eight years. Reading Parham, however, it is difficult to conceive that the court regarded plaintiff's suit in that case as being anything but reasonable. See Parham, 433 F.2d at 429–30. Second, in United Handicapped, 622 F.2d at 346–7, the court cited Parham in applying Nadeau's two-part test, apparently recognizing that Nadeau augmented, rather than contradicted Parham. Third, although the William's court made only a "catalyst" determination, it gave no reason for dispensing with the "reasonableness" prong of Nadeau in cases where voluntary compliance, rather than a settlement, achieved the desired relief. In all probability, the William's court decided not to discuss the "reasonableness" of the plaintiff's lawsuit in order to avoid belaboring the obvious—since plaintiff's suit was clearly reasonable—rather than to establish, sub silentio, a nice legal distinction between a settlement agreement and voluntary compliance. Fourth, United Handicapped itself recognized that Nadeau's two-part test applied to cases where a litigant obtains relief through either a settlement agreement or the voluntary action by the defendant. United Handicapped, 622 F.2d 346 n. 5.

Plaintiff does not offer and we cannot discern any reason why we should apply a different prevailing party test where relief is obtained through voluntary compliance rather than a settlement agreement. In both situations, the "reasonableness" inquiry is dictated by the same congressional

---

or even if he does not ultimately prevail on all issues. H.R.Rep. No. 96–1418 at 11, reprinted in 1980 U.S.Code Cong. & Ad.News 4953, 4990.

5. VA agrees that plaintiff's suit was a catalyst in maintaining the laboratory pending the Board's disposition on the merits of plaintiff's improper discharge claim. VA's Brief p. 15 n. 6.

purposes underlying the EAJA—i.e., vindicating a plaintiff's legal rights and deterring the government's unreasonable conduct. See H.R.Rep. No. 96–1418, at 1, 5, 10; 1980 U.S.Code Cong. & Ad.News, 4984, 4989; *see also Spencer v. NLRB,* 712 F.2d 539, 550 (D.C.Cir.1983). If plaintiff's legal claims were truly "frivolous, groundless, and unreasonable," then, regardless of the form the relief took, awarding attorneys' fees would serve neither to vindicate the plaintiff's legal rights nor to deter unreasonable government conduct.

This leads us to consider whether plaintiff's suit was unreasonable as a matter of law. Plaintiff's suit for a pretermination/pre-dismantling hearing was brought directly under the due process clause of the 5th Amendment to the United States Constitution. For purposes of our inquiry, we focus only on the aspect of the plaintiff's suit on which he was granted relief: i.e., the claim for a due process hearing prior to the dismantling of his laboratory. The district court concluded that the suit was reasonable, pointing to the plaintiff's eventual success before the Board. The VA contends the suits' unreasonableness was established by the district court's rejection of plaintiff's claim for a pre-dismantling hearing and by the Eighth Circuit's subsequent rejection of his injunction pending appeal. The VA's agreement not to dismantle was purportedly nothing more than a "gratuitous litigating courtesy," and should not be interpreted as a recognition or concession that plaintiff's suit had any legal merit. The VA also points out that plaintiff's success before the Board was irrelevant to the merits of his claim for pretermination dismantling hearing.

■ We do not believe plaintiff's suit may be regarded as so "frivolous, groundless, and unreasonable" that the VA's voluntary compliance may be regarded as "gratuitous." *See United Handicapped,* 622 F.2d at 347. First, though the district court denied preliminary relief, it apparently did so without the benefit of full briefing on the legal merits of plaintiff's due process claim. After having been fully briefed on the legal basis for the claim, however, the district court viewed the issue as being sufficiently close that plaintiff's claim could not be characterized as unreasonable. Without delving too deeply into an issue that has been mooted by the VA's voluntary compliance, we are unprepared to say that plaintiff's claim to a hearing prior to the dismantling of the laboratory was clearly devoid of merit under traditional constitutional theory. In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), six justices recognized that a civil service employee's right to a pretermination hearing was determined not by an absolute rule but by balancing the competing interests of the employee and the government employer. *Id.* at 167–68, 94 S.Ct. at 1650–51 (Powell, J. joined by Blackmun, J. concurring in part), 188, 94 S.Ct. 1661 (White, J. concurring in part and dissenting in part), 217–18, 94 S.Ct. 1675–76 (Marshall, J., joined by Brennan, J. and Douglas, J., dissenting). The balancing approach was more fully embraced and embellished in *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), where the court approved the Social Security Administration's practice of conducting hearings on the termination of disability benefits after termination. Later in *Brown v. Bathke,* 566 F.2d 588, 592 (8th Cir.1977) the Eighth Circuit, citing *Mathews,* stated that under some circumstances, a government employee's post-termination hearing may not satisfy due process. *See also Hathaway v. Mathews,* 546 F.2d 227, 230 (7th Cir.1976) (postdeprivation hearing may not satisfy due process). We cannot find and the VA has not pointed to any controlling precedent saying that a civil service employee is never entitled to a predeprivation hearing, regardless of the circumstances. Hence, plaintiff's right to a predismantling hearing is determined by balancing the competing interests of the plaintiff and the VA.

Applying a balancing approach, plaintiff's interest in preventing the irretrievable destruction of his scientific laboratory arguably may be more weighty than the interest of the discharged employee in *Arnett;* and, the VA's interest in dismantling the labora-

tory prior to a hearing may be less weighty than the government employer's interests in *Arnett*. Without expressing an opinion one way or the other on the proper resolution of this issue, we merely conclude that plaintiff's claim was not so frivolous that the VA's voluntary compliance may be presumed to be gratuitous.

The VA's suggestion that its voluntary compliance was merely a "gratuitous litigating courtesy" borders on self-serving hindsight which could be urged in every case mooted by the government voluntary compliance. The VA however relies on *Nadeau's* statement that "if it has been judicially determined that defendant's conduct . . . is not required by law, then defendants must be held to have acted gratuitously". 581 F.2d at 281. We are unwilling to interpret the district court's denial of preliminary injunctive relief and the Eighth Circuit's and Supreme Court's denials of an injunction pending appeal as a final judicial determination on the merits of plaintiff's due process claim. Indeed, the merit of that claim was still to be determined by the Eighth Circuit, until it was mooted by the VA's own voluntary compliance with plaintiff's requested relief. *See James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 545 (8th Cir.1982). Further, in determining, as a legal matter, the reasonableness of plaintiff's suit, neither the district court nor this court should be bound by a district court's preliminary assessment as to the plaintiff's probability of success on the merits. *Cf., Fernandes v. Limmer*, 663 F.2d 619, 637 (5th Cir.1981) (district court's denial of plaintiff's preliminary relief did not render erroneous the court conclusion that plaintiff ultimately prevailed.) A contrary position would permit the government to parlay a favorable preliminary finding, however ephemeral or erroneous, into a final legal victory on the merits by simply acceding to the plaintiff's desired relief prior to a final determination on the merits. Parodoxically, this would mean that a party, like plaintiff, who has prevailed in a practical sense would be denied attorneys'

fees simply because the government has, by virtue of its voluntary compliance, effectively precluded a final judicial determination on the merits.

We are also unpersuaded by the VA's contention that the fear of a fee award might force it "to harden its litigating position in the future" and "never to voluntarily agree to defer legal action as a litigating courtesy." We sympathize with the VA's well founded interest in quickly and efficiently disposing of claims through voluntary compliance or settlement. Indeed, our own interest in judicial economy aligns with this interest. However, the VA's expressed fear is unfounded because it assumes the existence of a significant risk that courts, in passing on attorneys' fees claims in voluntary compliance or settlement cases, will be unable to distinguish between frivolous and reasonable claims; for only the latter warrants an award of attorneys' fees. Second, as the *Nadeau* court so appropriately responded to virtually the identical argument:

> "The argument cuts both ways. If defendants may refuse to settle a case and accept the cost of continued litigation to avoid paying attorneys' fees, it is equally likely that plaintiff's counsel, rather than receive no compensation at all for their efforts, would be willing to continue the litigation on the chance that they might cut if not eliminate their losses. We cannot decide this issue based on such honest but speculative concerns."

### III. Eligibility for relief under EAJA

Plaintiff seeks attorneys' fees under two separate provisions of the EAJA, 28 U.S.C. § 2412. First, § 2412(b), the "discretionary" subsection, provides that a court "may award" fees to private prevailing parties in civil actions against the United States and declares that "[t]he United States shall be liable for such fees to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such

an award." [6] Second, § 2412(d)(1)(A), the more sweeping "mandatory" subsection, provides that a court shall award fees to private prevailing parties unless "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." [7]

The district court awarded attorneys' fees under § 2412(b), without passing on whether fees could have been awarded under § 2412(d). In doing so, the district court read § 2412(b) in conjunction with 42 U.S.C. § 1988 (Civil Right Attorneys' Fee Awards Act of 1976). Under 42 U.S.C. § 1988 [8] a court is authorized to award attorneys' fees against litigants other than the United States where the plaintiff has sued "to enforce a provision of" the enumerated civil rights statutes including 42 U.S.C. § 1983. Section 1983 [9] in turn, provides a statutory right of action against "any person who, acting under color of state law, violates the constitutional rights of another". Hence, § 1988 authorizes fee awards in actions against state officials involving deprivation of constitutional rights under color of state law. Plaintiff's claim alleged a constitutional violation by federal officials acting under color of federal law. While plaintiff's claim would not give rise to a fee award under § 1988 since it lacked

the state action component of § 1983, it was nearly identical to a § 1983 action, the only difference being the alleged constitutional deprivation was under color of federal law, not state law.

The district court essentially adopted the view that § 2412(b) had the effect of making the United States liable for attorneys' fees to a party who prevails against it in a suit seeking to vindicate constitutional rights—in this case, plaintiff's 5th Amendment procedural due process rights—on the grounds that a state or its official would ordinarily be liable, under § 1988, in an analogous suit brought under § 1983. Thus, § 2412(b)'s language making the United States liable for attorneys' fees "to the same extent that any other party would be liable" was interpreted to make the United States liable when it engages in activity that, if carried on by any "other party"—e.g., a state official, acting under color of state law—would result in assessment of attorneys' fees against that party under § 1988.

The plaintiff suggests that the district court's interpretation of § 2412(b) is consistent with the EAJA's remedial purpose of putting the United States on "complete equal footing" with states who violate con-

6. The full text of the provision reads:
 Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to [§ 2412(a)], to the prevailing party in any civil action brought by or against the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
 28 U.S.C. § 2412(b) (Supp. V 1981).

7. The full text of the provision reads:
 Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to [§ 2412(a)], incurred by that party in any civil action (other than cases sounding in tort) brought by or against

the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances made an award unjust.
 28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981).

8. 42 U.S.C. § 1988 provides in part:
 In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.

9. 42 U.S.C. § 1983 provides:
 Every person who, under color of . . . any State [law] . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

stitutional rights. Just as state officials are liable for fees under § 1988 in a § 1983 action alleging a constitutional violation under color of state law, so too then the United States is liable, pursuant to § 2412(b), in a suit alleging an analogous constitutional violation under color of federal law. While conceding that the statutory language is ambiguous on this point, plaintiff urges that the legislative history supports this broad interpretation of the language making the United States liable for fees "to the same extent that any other party" would be liable. *See Lauritzen v. Sec. of the Navy,* 546 F.Supp. 1221, 1227–29 (C.D.Ca.1982).

The VA on the other hand avers that § 2412(b) is a limited waiver of sovereign immunity and must be strictly construed. It contends that § 2412(b), strictly construed, does not make the United States automatically liable for fees in suits alleging constitutional violations by federal officials acting under federal law. Rather, it authorizes fees only "to the same extent that" another fee shifting statute—in this case § 1988—would make "any other party" liable for fees. However, § 1988 would not authorize a fee against "any other party" because there has been no violation of a statute encompassed by § 1988—specifically, § 1983. While plaintiff's claim is analogous to a § 1983 suit, it nevertheless could not have invoked the provisions of § 1983 because the alleged deprivation was under color of federal, not state law. Thus, because no "other party would be liable" for fees under § 1988, the United States is non-liable "to the same extent". *See United States v. Miscellaneous Pornographic*

*Magazines,* 541 F.Supp. 122, 125, 127–28 (N.D.Ill.1982). The United States additionally urges that to hold the United States automatically liable for fees in constitutional suits would mean the United States would be liable for fees regardless of whether its position was "substantially justified," thus effectively swallowing up the provisions of § 2412(d). *Id.* Arguably, this would run afoul of Congress' desire that the EAJA not impair the government's ability to enforce and administer the federal laws.

Candor compels us to admit that both parties' interpretations and supporting arguments are persuasive. The problem we face is deciding which one of the two interpretations is more consistent with Congress' intent. The judiciary has not settled on one or the other. To date, no other Circuit has determined whether § 2412(b) was intended to authorize fee awards against the United States when it loses a federal civil rights suit. Those four district courts facing this issue have come to different conclusions.[10] We are thus called upon to make our own inquiry on this very close statutory construction matter.

■ We first turn to the relevant statutory language itself. *See Universities Research Ass'n v. Coutu,* 450 U.S. 754, 771, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981). Section 2412(b) provides that in civil actions against the United States or federal officers, "*[t]he United States shall be liable for such fees and expenses to the same extent that any other party would be liable* under the common law or under the terms of any statute which specifically provides for such an award." Thus, the disputed limiting lan-

---

**10.** In *Lauritzen v. Secretary of the Navy,* 546 F.Supp. 1221, 1227–1229 (C.D.Ca.1982) Judge Tashima, having carefully reviewed § 2412(b)'s legislative history and purpose, concluded that the language making the United States liable for fees "to the same extent as any other party" reflected Congress' intent to place the United States on complete equal footing with the states under § 1988. Thus, the United States was held liable for fees where federal official's violated plaintiff's constitutional rights since state officials would have been liable under § 1988 if they had done the same thing. Three other district courts have concluded that

§ 2412(b)'s express language, which overrides any contrary legislative history, makes the United States liable only in suits where "any other party"—i.e., a state official—would in fact be liable for payment of fees under § 1988. This could not occur in a *Biven's* type claim, which is lacking the state action predicate to liability under § 1983. *United States v. Miscellaneous Pornographic Magazines,* 541 F.Supp. 122, 127 (N.D.Ill.1982); *Venus v. Goodman,* 556 F.Supp. 514, 520–21 (W.D.Wis.1983); *Unification Church v. I.N.S.,* 574 F.Supp. 93 (D.C. 1983).

guage, which is highlighted, applies *pari passu* to both the "common law" and "statutory" fee shifting provisions. We can therefore glean Congress' intent with respect to the statutory exceptions by considering Congress' unambiguous intent with respect to the "common law" exceptions. *See Northcross*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (similar attorneys' fee authorizing provisions should be interpreted *pari passu*.)

■ The federal judiciary has recognized several exceptions to the American Rule on attorney fees and has held that a successful litigant may recover fees against a losing litigant who "has acted in bad faith, vexatiously, wantonly, or for oppressive reason;"[11] also a successful litigant who, by virtue of winning his suit, has conferred a "common benefit" on a group of persons may recover fees from the beneficiaries.[12] *See Spencer v. NLRB*, 712 F.2d 539, 543 (D.C.Cir.1983). One important effect of § 2412(b) was to codify and make applicable to the United States the "bad faith" and "common benefit" exceptions to the American Rule. *See H.R.Rep. No. 1418 at 9, 17 (1980); reprinted in 1980 U.S.Code Cong. & Ad.News 4987, 4996; see also Spencer*, 712 F.2d at 545 (D.C.Cir.1983).[13] No one has suggested that the language making the United States liable for fees "to the same extent as any other party would be liable under the common law" should be interpreted to authorize fees against the United States only in a suit where the prevailing party could have invoked a common law exception to recover fees against some party other than the United States. For example, if, in a civil suit, the federal government has acted "in bad faith, vexatiously, wantonly or for oppressive reason," it would seem anomalous to immunize it from

paying attorneys' fees simply because the prevailing party could not have recovered, in the same suit, fees against some "other party" for similar bad faith. That Congress had no intention of sanctioning this anomalous result was made clear by the House Report No. 96–1418, accompanying the final version of the EAJA, which states:

> The EAJA amends 28 U.S.C. § 2412 to permit a court in its discretion to award attorney fees and other expenses to prevailing parties in civil litigation *to the same extent it may award fees in cases involving other parties.* Thus, the United States would be liable for fees under the "bad faith", "common fund" and "common benefit" exception to the American Rule. There appears to be no justification for exempting the United States in this situation; [ ].

H.R.Rep. No. 1418 at 9; 1980 U.S.Cong. Code & Ad.News at 4987. (emphasis added).

■ What this tells us is that the United States' liability for fees in civil actions should be subject to the *same* common law standards applicable to any other party. For instance, the United States would be liable for fees if it acted in bad faith "to the same extent" that any other party who acted in similar bad faith would have been liable for fees. In short, similar conduct warrants similar fee shifting treatment, regardless of whether the similar conduct was committed in the same suit.

It would seem only reasonable and logical to interpret the statutory fee shifting exception similarly. Thus, if the United States was engaged in conduct that, if carried on by some "other party", would render that "other party" liable under a statutory fee shifting provision, then the United States should be liable "to the same

---

**11.** *F.D. Rich Co. v. United States*, 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974).

**12.** *Mills v. Electric Auto Lite Co.*, 396 U.S. 375, 392–97, 90 S.Ct. 616, 625–28, 24 L.Ed.2d 593 (1970).

**13.** Prior to the EAJA, the inapplicability of the "bad faith" and "common fund" exceptions to the United States derived from two sources:

"the general doctrine of sovereign immunity; and 28 U.S.C. § 2412, which prior to amendment by the EAJA, was 'consistently construed as immunizing the United States against attorney's fees awards absent clear or express statutory authority to the contrary.'" *Spencer*, 712 F.2d at 545, *quoting NAACP v. Civiletti*, 609 F.2d 514, 516 (D.C.Cir.1979).

extent". Like the "common law" provision, the statutory provision would be read to place the United States on completely equal footing with any "other party"; similar conduct would warrant similar fee shifting treatment. This interpretation would of course render the United States liable for fees in suits involving constitutional violations by federal officials, acting under federal law, because a state (an "other party") would be liable for fees under § 1988 if state officials, acting under color of state law, committed a similar constitutional violation.

Thus, although the language of § 2412(b) is relatively opaque, it neither precludes nor renders implausible an interpretation that would authorize fees in a case like the instant one. Nor does the language, even strictly construed, necessarily support the VA's proffered interpretation limiting the United States liability for fees to those suits in which a statutory exception (e.g., § 1988) would in fact apply to some "other party" (e.g., the state); indeed, as discussed above, such an interpretation would be fundamentally inconsistent with the way identical language is interpreted in the context of the "common law" exception. Saying this, however, we are not unmindful of the suggestion that if Congress really wanted to make the United States liable for fees in constitutional deprivation actions, it could have done so more clearly and precisely, perhaps by simply amending § 1988 of the Civil Rights Act. Conceivably, however, Congress thought clarity would be served by simply consolidating all fee shifting exceptions—both common law and statutory exceptions—applicable to "other parties" into one provision, making all of these exceptions applicable to the United States "to the same extent". In any event, Congress' lack of precision in drafting legislation should never be an instrument for defeating or frustrating the manifest purpose and intent of Congress, as revealed by the legislative history. Where, as here, a remedial statutory provision is relatively opaque and susceptible to more than one interpretation, a court may discern congressional intent by resorting to the legislative history and purpose. As stated in *Lambur v. Yates,* 148 F.2d 137, 139 (8th Cir.1945):

> All statutes must be given sensible construction. The sole object of construction is to determine the legislative intent. Such intent must be found primarily in the language of the statute itself; but when the language is ambiguous or the meaning is doubtful, the court should consider the purpose, the subject matter and the condition of affairs which led to its enactment, and so construe it as to effectuate and not destroy the spirit and force of the law and not to render it absurd.

Cf., *Ashley Drew and Northern Ry. v. United Transp. Union,* 625 F.2d 1357, 1365 (8th Cir.1980) ("it is impermissible to follow a literal reading that engenders absurd consequences where there is an alternative interpretation that reasonably effects the statute's purpose"); *see also Stribling v. United States,* 419 F.2d 1350, 1352 (8th Cir.1969).

A close evaluation of the legislative history and purpose of § 2412(b) convinces us that Congress, in making the United States liable for attorneys' fees "to the same extent as any other party would be liable ... under the terms of any statute providing for such fees," intended to authorize fee awards in suits, like the one here, where federal government officials have violated plaintiff's fundamental constitutional rights, since state officials would be liable for fees under § 1988 for analogous violations of plaintiff's constitutional rights.

First, as stated in the relevant Report of the House Committee on the Judiciary (H.R.Rep. No. 1418 at 5–6, 9, 10; 1980 U.S. Code Cong. & Ad.News 4984, 4987) the EAJA was intended to ensure that individuals and small businesses "would not be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights". *See also Berman v. Schweiker,* 713 F.2d 1290, 1295–96, (7th Cir.1983). Pursuant to that purpose, § 2412(b) was designed "[to establish]

a general statutory exception for an award of fees against the Government" and "[to place] the federal government and civil litigants [both private parties and states] on a completely equal footing" with respect to attorneys' fees. House Report at 8, 9; 1980 U.S.Code Cong. & Ad.News at 4987. These objectives could be best served by making the United States liable for fees in suits against federal officials for vindication of constitutional right, "to the same extent that" states (the "other party") are liable for fees in analogous § 1983 suits involving state officials.

Second, the legislative history reveals that Senate Bill 265, which was to become the EAJA, was specifically amended to assure the United States would be liable for attorneys' fees in suits of the type involved here. Senate Bill 265, as originally proposed in 1979, provided in § 2412(b) that the United States shall be liable to the same extent as "a private party" (rather than any other party) would be liable. *See Award of Attorneys' Fees Against The Federal Government: Hearing on S.B. 265 Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Judiciary Committee,* 96th Cong. 2d Sess. at 1, 3, 9 (setting forth S.B. 265 as of August 1979).[14] However, after hearings on S.B. 265 before the House Subcommittee on Courts, Civil Liberties and the Administration of Justice, the subcommittee changed the language of § 2412(b) so that the final version made the United States liable to the same extent as "any other party", rather than "a private party", would be liable. *See* H.R.Rep. No. 96–1418 at 1, 4, 7; 1980 U.S.Code Cong. & Ad.News 4985–86. Obviously, the subcommittee was persuaded by the testimony of Armend

Derfner of the Lawyer's Committee for Civil Rights Under Law. *Id.* at 7; 1980 U.S.Code Cong. & Ad.News 4985–86. Mr. Derfner told the subcommittee:

Mr. Kastenmeier, if I could just direct myself to one portion of this bill?

There is an area in which a slight drafting modification could carry out what I believe might be the intention of the committee; and that is to put the United States completely on a par as far as the enforcement of important constitutional and statutory rights.

In the Civil Rights Act of 1976 you provided that when someone, whether it be an individual or business, or whatever, sues a State or local government under 42 United States Code, section 1983, to vindicate a constitutional or Federal statutory right, that fees would be available under the *Newman v. Peggy [Piggie] [sic] Park* standard. These bills say that the United States should pay fees-in the amendment to 28 United States Code 2412-in those circumstances where the court may award such fees in suits involving private parties.

That doesn't say State or local government, but if the language were amended to read, "in those circumstances where the court may award such fees in suits involving other litigants"; it would achieve that purpose. And I think it would go even further toward putting the United States on a par with other governmental bodies.

Hearings on S.B. 265 at 100.

The import of Mr. Derfner's remarks seems pretty clear: by extending the United States' liability for attorneys' fees to that of "any other party", Congress would make the federal government liable for at-

**14.** Senate Report No. 96–253, 96th Cong. 1st Sess. 4 (1979), explains the intended purpose of this *original* version of § 2412(b).

Senate bill 265 makes two changes in present law. First, it amends 28 U.S.C. 2412 to permit a court in its discretion to award attorneys' fees and other expenses to prevailing parties in civil litigation involving the United States to the same extent it may award fees in cases involving private parties .... There appears to be no justification for

exempting the United States in these situations; the change simply reflects the belief that, at minimum, the United States should be held to the same standards in litigating as private parties. *As such, it is consistent with the history of § 2412 which reflects a strong movement by Congress toward placing the Federal Government and civil litigants on a completely equal footing. See generally, Natural Resources Defense Council v. E.P.A.,* 484 F.2d 1331 (1st Cir.1973).

torneys' fees in suits seeking to vindicate federal constitutional rights, just as states are liable under § 1988 for fees in analogous suits against state officials brought under § 1983. In accordance with Mr. Derfner's suggestion, the subcommittee amended S.B. 265 to read "any other party" in the immediately succeeding draft, which became the final version of the EAJA. H.R.Rep. No. 96–1418 at 1, 4, 7. We believe this sequence of events demonstrates Congress' intent to extend § 2412(b) to make the United States liable for fees in suits, like the instant one, where federal officials engage in activity that, if carried on by a state official, would render a state liable for attorneys' fees under 42 U.S.C. § 1988.

Finally, the drafters of the bill were well aware of the potential applicability of § 2412(b) to § 1988. House Report No. 96–1418 provides that the Act "reflects a strong movement ... toward placing the federal government and civil litigants on a completely equal footing" and that "[2412(b)] clarifies the liability of the United States under such statutes as the Civil Rights Attorneys' Fees Awards Act of 1976 [42 U.S.C. § 1988]." H.R.Rep. No. 1418 at 9, 17; 1980 U.S.Code Cong. & Ad.News at 4987, 4996.

We do not regard our interpretation here as violative of the rule requiring waivers of sovereign immunity to be strictly construed. *Compare Monark Boat Co. v. NLRB,* 708 F.2d 1322 (8th Cir.1983). Unlike in *Monark Boat,* the case upon which the VA principally relies, the legislative history and purpose behind the language we interpret here clearly supports a finding that the Congress waived the government's sovereign immunity for cases like this one. Perhaps Congress could have drafted § 2412(b) with more precision and clarity. Even conceding the language lacks clarity, however, we fail

to see how this supports the VA's interpretation of § 2412(b) making the United States liable for fees only in those rare constitutional suits in which federal officials have acted in concert with a state actor.[15] Such an interpretation of the language making the United States liable *"to the same extent that any other party would be liable"* encounters three obstacles which, when considered together, are insurmountable. First, it would conflict with the clearly established meaning of that language when used in reference to the "common law" exceptions of § 2412(b). As mentioned above, it would be anomalous to insulate the United States from fee awards where federal officials pursue litigation in "bad faith" simply because no "other party" in the litigation is guilty of similar acts of "bad faith". Second, the VA's interpretation is without support in the EAJA's legislative history and, in fact, actually conflicts with its legislative history. Third, it would frustrate the Congressional purpose behind § 2412(b) of putting the United States and other civil litigants, whether private parties or states, on completely equal footing under existing fee shifting statutes.

The VA however points out that the failure to retain the state action requirement of § 1983 for purposes of § 2412(b) fee awards would mean that the United States would be liable for fees regardless of whether its position was "substantially justified" under § 2412(d).[16] The VA fears that § 2412(b), read without a state action requirement, would effectively swallow up the more lenient "substantial justification" standard of § 2412(d), and thereby seriously hamper the proper enforcement and administration of federal law. The VA predicates this contention on the assumption that § 1983 extends not only to violations of

---

**15.** The VA's interpretation of the limited scope of 2412(b) was adopted by the court *United States v. Miscellaneous Pornographic Magazines,* 541 F.Supp. at 127–29. As the VA points out, a § 1983 cause of action lies against federal officials who act in concert with state officials acting under color of state laws. *See Hampton v. Hanrahan,* 600 F.2d 600, 630 (7th

Cir.1979), *rev'd in part on other grounds* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

**16.** § 2412(d) provides for recovery of fees in civil actions, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." (*See* note 6, *supra,* for full text.)

constitutional rights, but also to violations of rights created by a broad range of federal statutes. *See Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980); *Miscellaneous Pornographic,* 541 F.Supp. at 125.

We do not share the VA's fear that § 2412(d) will be swallowed up by § 2412(b) under our interpretation. Section 2412(d) was designed primarily to encourage small businesses to contest the unreasonable exercise of federal agency action. *See* H.R.Rep. No. 1418 at 9–10; 1980 U.S.Code Cong. & Ad.News at 4988. Accordingly, § 2412(d) was envisioned as a sort of catchall provision, encompassing a broad range of federal regulatory litigation not already covered by existing fee-shifting statutes. *Id.* at 18; 1980 U.S.Code Cong. & Ad.News at 4997. ("[§ 2412(d)] is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized"). Thus, § 2412(d)'s provision covers numerous types of suits which would not fall within the rubric of § 1983 type suits. Moreover, the VA's claim that § 2412(d) will be rendered meaningless is fundamentally flawed insofar as it is based on the notion that § 1983 encompasses a violation of any federal statute. Recently, the Eighth Circuit considered the implication of the Supreme Court's *Maine v. Thiboutot* decision and concluded that § 1983

provides a cause of action for violations of only those statutory rights "akin to fundamental rights protected by the fourteenth amendment." *First National Bank of Omaha v. Marquette National Bank of Minneapolis,* 636 F.2d 195 (8th Cir.1980) *cert. denied* 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981) (holding that a violation of plaintiff's bank's rights under the National Banking Act did not give rise to a § 1983 cause of action). Finally, to the extent that there is a conflict between § 2412(b) and 2412(d), Congress apparently intended the more specific § 2412(b) fee shifting provision to supercede the more general § 2412(d). *See* House Report at 18; 1980 U.S.Cong. & Ad. News at 4997.

Having determined that plaintiff, as a prevailing party, can obtain fees under § 2412(b), we need not pass upon his alternative claim that he was entitled to fees under § 2412(d) because the government's "position", defined by plaintiff to include the VA's prelitigation position, was not "substantially justified." [17]

### IV. The Fee Award

A) *Fees incurred before October 1, 1981*

The VA argues for this first time on appeal, that if plaintiff is entitled to an award of attorneys' fees, he cannot recover any fees incurred prior to the effective date of the EAJA, October 1, 1981, even though

---

**17.** As recently recognized in *Foley Construction Co. v. United States Army Corp. of Engineers,* 716 F.2d 1202, 1204 (8th Cir.1983) the EAJA does not make clear whether the "position" the government must justify is its "litigation position" or its "underlying agency action" that precipitated the lawsuit. In *Foley* the court considered only the government's "litigation position" because the parties so framed the issue. In most cases, the distinction between "underlying action" and "litigation position" makes no difference because "the litigation position of the United States will almost always be that its underlying action was legally justifiable". *Spencer v. NLRB,* 712 F.2d at 551–552. In this case, however, the distinction would make a big difference because plaintiff's § 2412(d) claim focuses entirely upon the allegedly unjustified agency action in terminating him, which precipitated the lawsuit. Circuit courts squarely addressing the nettlesome issue of whether Congress intended for the government's "position" to include the underlying

agency action have read the same legislative history and come to different results. *See Natural Resources Defense Council Inc., v. E.P.A.,* 703 F.2d 700, 707 (3rd Cir.1983) (underlying agency action); *Dougherty v. Lehman,* 711 F.2d 555, 561 (3rd Cir.1983) (underlying agency action); *Spencer v. NLRB,* 712 F.2d 539, 557 (D.C.Cir.1983) (government's litigation position); *Kay Mfg. Co. v. United States,* 699 F.2d 1376, 1379 (Fed.Cir.1983); (government's litigation position); *Tyler Business Servs. v. NLRB,* 695 F.2d 73, 75 (4th Cir.1982) (government's litigation position); *Broad Ave. Laundry & Tailoring v. United States,* 693 F.2d 1387, 1390 (Fed.Cir.1982) (government's litigation position). This split reveals the extreme closeness of this issue. Both interpretations find support in the legislative language and history. *See Spencer,* 712 F.2d at 547–49. We are reluctant to decide this issue here because the district court failed to make any findings on the reasonableness of the government's "position", either its prelitigation or litigation position.

plaintiff's case was indisputably "pending" on that date.[18] It contends that sovereign immunity was not expressly waived for fees and expenses incurred before October 1, 1981.

 While recognizing that waivers of sovereign immunity must be strictly construed (*see Monark Boat Co. v. NLRB,* 708 F.2d 1322 (8th Cir.1983)), we conclude that Congress clearly intended that a prevailing party in a suit against the United States is entitled to attorneys' fees for services rendered prior to the effective date of the EAJA (October 1, 1981), provided the suit was pending on the effective date. In so holding we are in accord with every other Circuit Court addressing this issue. *See United States for Heydt v. Citizens State Bank,* 668 F.2d 444, 446 (8th Cir.1982); *Berman v. Schweiker,* 713 F.2d 1290, 1299 (7th Cir.1983); *Kay Mfg. Co. v. United States,* 699 F.2d 1376, 1378 (Fed.Cir.1983); *Natural Resources Defense Council v. U.S. Environmental Protection Agency,* 703 F.2d 700, 712–13 (3rd Cir.1983); *Tyler Business Services, Inc. v. NLRB,* 695 F.2d 73, 77 (4th Cir.1982).[19]

Section 208 of the EAJA, Pub.L. No. 96–481, explicitly states that it is applicable to fees in cases pending on October 1, 1981:

"Sec. 208. This title [i.e., title II, the EAJA] and the amendments made by this title shall apply to any civil action ... described in section 2412 of title 28, United States Code, which is *pending* on, or commenced on or after such date."

The meaning of this language is clear: the EAJA applies to fees generated before or after the effective date as long as the action was "pending" on October 1, 1981. Any other construction—even applying the strict construction doctrine—would require a tortured reading. *See Berman,* 713 F.2d at 1300. "The statement that a statute applies to case 'pending' on its effective date means precisely that, and unless Congress indicates otherwise, the statute applies in full to all such cases." *Kay,* 699 F.2d at 1378. "If Congress had intended to exclude pre-effective date fees, it could have done so by simply stating in Section 208 that only post-effective date fees for pending actions or actions commenced after October 1, 1981 were covered." *Berman,* 713 F.2d at 1297.

Nothing in the EAJA's legislative history indicates that Congress intended to distinguish between fees incurred before and those incurred after October 1, 1981, in cases that were pending on that date. *See Heydt,* 668 F.2d at 446 (court, interpreting EAJA as authorizing fees for pre-effective date work, stated "[a]n appellate court must apply the law in effect at the time it renders its decision unless there is some indication to the contrary in the statute or its legislative history or unless manifest injustice would result.") In fact, the legislative history buttresses our interpretation. Specifically, the Congressional Budget Office's (CBO's) estimates of the cost to the government of the EAJA reveal a congressional recognition that the pre-Act fees would be covered. The CBO cost estimates, which Congress had available when it passed the EAJA, predicted that the annual expenditures could vary *only* with the number of cases terminated each year, the inflation rate, and the EAJA's incentive effect H.R.Rep. No. 1418 at 21–23; 1980 U.S.Code Cong. & Ad.News, 4984, 5000. The CBO projected the EAJA would cost an estimated $92 million in fiscal year 1982,[20] $109

---

**18.** As the parties agree very little of the district court's fee award was attributable to the work expended on this case after October 1, 1981. Apparently, the only post-October 1 work was counsel's preparation of plaintiff's request for attorneys' fees. The Board's decision reinstating plaintiff was issued September 16, 1981, and the court dismissed as moot plaintiff's appeal from the court's denial of a preliminary injunction on October 27, 1981.

**19.** To date no circuit court has adopted the contrary view limiting fees to work performed after the effective date. Only the Northern District of Illinois courts have adopted this interpretation. *See Commodity Futures Trading Comm. v. Rosenthal & Co.,* 537 F.Supp. 1094, 1096 (N.D.Ill.1982); *Allen v. United States,* 547 F.Supp. 357 (N.D.Ill.1982).

**20.** Since the EAJA became effective on October 1, 1981, (the first day of fiscal year 1982) there

million in fiscal 1983, and $129 million in fiscal 1984. These yearly increases are nearly constant, rather than askewed as one would expect if those fees incurred prior to October 1, 1981 were being excluded. Indeed, if pre-October 1, 1981 fees were being excluded, then one would expect the budget for 1982 to be significantly lower than the budget for 1983 because the number of cases terminating in 1982 (but pending prior to October 1, 1981) would have a large portion of their fees excluded. *See Nunes-Correia v. Haig,* 543 F.Supp. 812, 815–16 (D.D.C.1982) (CBO cost estimates "demonstrate that Congress clearly intended the Act to authorize fees for work performed before October 1, 1981.")

▮ Furthermore, interpreting the EAJA to permit recovery of fees incurred prior to the effective date would not defeat the purposes of the EAJA—i.e., to compensate those seeking to vindicate their rights against unreasonable government action and to prospectively deter unreasonable government action. Indeed, such an interpretation may further these goals. *See Berman,* 713 F.2d 1290.

Thus, our interpretation passes muster even under the strict construction rules set forth in the three cases upon which the VA principally relies—*Monark Boat Co. v. NLRB,* 708 F.2d 1322 (8th Cir.1983), *Brookfield Construction Co. v. United States,* 661 F.2d 159, 228 Ct.Cl. 551 (1981), and *Commissioners of Highways v. United States,* 684 F.2d, 443, 444–445 (7th Cir.1982). It should be noted that *Monark* dealt with the interpretation of statutory language that was anything but clear. And, without specifically discussing *Brookfield Construction* or *Commissioner of Highways,* we simply add that those two cases presented statutory construction issues inapposite to the statutory construction issue we address here. *See Kay,* 699 F.2d at 1378 (distinguishing *Brookfield*); *Berman,* 713 F.2d at 1301–03 (distinguishing both *Commissioner of Highways* and *Brookfield Construction.*)

*B) Reasonableness of the fees award*

▮ In awarding attorneys' fees of $15,-630.67 [21] the district court began its assessment of a reasonable fee by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate, which in this case equaled $23,806.00. *See Hensley v. Eckerhart,* —— U.S. at ——, 103 S.Ct. at 1939, 76 L.Ed.2d at 50. Recognizing that this did not end the matter, the court then adjusted the fee amount downward by one third to take account of additional factors set forth in *Johnson v. Georgia,* 488 F.2d 714, 717–719 (5th Cir.1974)— including the "results obtained factor". As the Supreme Court recently observed in *Hensley,* the "[results obtained] factor is particularly crucial where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief." —— U.S. at ——, 103 S.Ct. at 1940, 76 L.Ed.2d at 51.

▮ We do not believe the district court's downward adjustment went far enough. The predismantling claim—the one plaintiff prevailed on—was certainly related to the pretermination claim insofar as both were essentially procedural due process claims. *See Hensley* (relatedness of successful and nonsuccessful claims is a factor in determining "results obtained"). Nevertheless, plaintiff did not "achieve a level of success that makes the hours reasonably expended a satisfactory basis [for the fee award]". Instead, plaintiff achieved only "partial success." *Hensley,* —— U.S. at —— –——, —— –——, 103 S.Ct. at 1940–41, 1943, 76 L.Ed.2d at 51–2, 54–5; *compare Tusa v. Omaha Auto Auction,* 712 F.2d 1248, 1255 (8th Cir.1983). While plaintiff's affidavits in support of fees do not reveal the time allocated to the pretermination and predismantling claims, it is clear from the briefs in support of the injunction, that plaintiff treated the pretermination issue, the losing issue, as being of major importance to his overall relief.

was no reason to authorize awards for the fiscal year 1981. *See Berman,* 713 F.2d 1299.

21. The district court also awarded plaintiff the entire amount of claimed out-of-pocket expenses, totalling $1,848.49. (*See* Des.Rec. at 112 and *Premachandra,* 548 F.Supp. at 122).

Moreover, considering the nature of the due process issue involved, we do not believe the 411.3 attorney hours spent on the law suit was reasonable. "In determining a proper fee award, [a] court should consider the number of hours ordinarily necessary competently to prepare comparable cases." *Bonner v. Coughlin*, 657 F.2d 931, 934 (7th Cir.1981); *citing Brown v. Bathke*, 588 F.2d 634, 638 (8th Cir.1978). Also, "[f]ee awards based upon an excessive number of hours would encourage overpreparation of often relatively simple cases . . . ." *Bonner*, 657 F.2d at 935. By comparative standards, the case here was neither legally nor factually complex. Although the procedural due process issue raised was a close one, it was not the type of complicated issue typically warranting such extraordinary research and preparation time. *See Gagne v. Maher*, 594 F.2d 336, 345 (2d Cir.1979), *aff'd* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) (trial court properly disallowed half the hours claimed in civil rights case where issues were relatively simple and most attorneys would not have spent so much time on the case); *Bonner*, 657 F.2d 931 (appellate court vacated determination of 253.5 hours of attorney time spent for a two-day § 1983 trial, concluding that the issues raised were not legally or factually complex); *Peeler v. Longview Independent Sch. Dist.*, 485 F.Supp. 117, 122 (E.D.Tex.1979) (trial court reduced fees from $49,127.00 to $3,000, finding that the procedural due process claim involved was relatively simple).

Therefore, in light of the limited success and the uncomplicated nature of the issue, we reduce the fee award to $10,000 leaving the award of $1,848.49 in expenses intact.

Judgment affirmed to the extent of an award of $10,000.00 for attorneys' fees, plus $1,848.49 in expenses. On appeal, three-fourths of costs assessed against the VA and one-fourth against plaintiff, Dr. Premachandra.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The district court denied Dr. Premachandra's request for a preliminary injunction on the ground that there was no likelihood that his suit would succeed on the merits. On appeal, this court denied his request for an injunction pending appeal, and his request for rehearing and rehearing en banc of this decision was also denied. Justice Blackmun then twice denied Dr. Premachandra's application for an injunction pending appeal, and the full Supreme Court similarly denied him this relief.

In *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1st Cir.1978), relied upon by *United Handicapped Federation v. Andre*, 622 F.2d 342, 345–46 (8th Cir.1980), the court states:

Even if plaintiffs can establish that their suit was causally related to the defendants' action which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.

In *Nadeau*, the district court's decision favorable to the plaintiff was reversed and remanded on appeal. Before a second trial began, the parties entered into a consent decree. Consequently, there was no judicial determination as to whether the defendants' conduct was required by law. The court, in determining the plaintiff's right to attorneys' fees under these circumstances, decided that the defendants' action was gratuitous if the plaintiff's suit was "frivolous, unreasonable or groundless." *Nadeau*, 581 F.2d at 281. The majority in this case awards Dr. Premachandra attorney's fees on the ground that his suit met this standard.

This case is distinguishable from *Nadeau*, however, in that a judicial determination has been made. Dr. Premachandra's request for a preliminary injunction was denied, and repeated requests for an injunction pending appeal were unsuccessful. I

therefore believe that we need not consider the reasonableness of his suit. There has been a sufficient determination, for attorneys' fees purposes, that the VA's action was not required by law, and therefore gratuitous. In light of the above standard, Dr. Premachandra was not a prevailing party.

Dr. Premachandra was awarded a fee for his successful litigation before the Merit Systems Protection Board and has retained his employment. Insofar as it can be said that he prevailed, it was before the Merit Systems Protection Board, and not in this litigation. I would reverse the district court and deny a fee on Dr. Premachandra's claim with respect to the dismantling of the laboratory.