Dwight COLEMAN, Lester Crowsheart, Sharon Crowsheart, Russel Folmer, Anna Mae Folmer, George Hatfield, June Hatfield, Donald McCabe, Diane McCabe, Gary Barrett, Rosemary K. Barrett, Richard L. Harmon, Betty J. Harmon, Larry L. Robertson, Nancy K. Robertson, Ross Wade and Maureen Wade, on behalf of themselves and others similarly situated, Plaintiffs,

v.

John R. BLOCK, Secretary of Agriculture; Charles W. Shuman, Administrator of the Farmers Home Administration, Ralph W. Leet, State Director of the Farmers Home Administration, Harold T. Aasmundstad, Glen W. Binegar, Allen G. Drege, Dennis W. Larson, Odell O. Ottmar, and Joseph J. Schneider, as District Directors of the Farmers Home Administration for North Dakota, and Samuel Delvo, Lorace Hakanson, Larry Leier, Charles Schaefer and James Well, as County Supervisors of the Farmers Home Administration in North Dakota, Defendants.

Civ. A. No. A1–83–47.

United States District Court,
D. North Dakota,
Southwestern Division.

June 15, 1984.

Sarah M. Vogel, Grand Forks, N.D., for plaintiffs.

Gary Annear, Asst. U.S. Atty., Fargo, N.D., Arthur R. Goldberg, Civ. Div., Atty., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

This suit was brought on behalf of a state-wide class of farmers and was later expanded to include a nation-wide class. It challenged the loan servicing and loan deferral practices of the Farmers Home Administration (FmHA). The Court granted preliminary and permanent injunctive relief. *See* 562 F.Supp. 1353 (D.N.D.1983) (state-wide class certified and preliminary injunction granted); 580 F.Supp. 192 (D.N.D.1983) (preliminary injunction applied to national class); 580 F.Supp. 194 (D.N.D. 1984) (permanent injunction granted). Plaintiffs then submitted a motion for attorney fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (Supp. V 1981), alternatively under § 2412(b) and § 2412(d).

When the Court began consideration of the motion, it learned that the Eighth Circuit case of *Premachandra v. Mitts,* 727 F.2d 717 (1984), interpreted § 2412(b) and was critical to determining plaintiffs' eligibility for an award of attorney fees. It also learned that the Eighth Circuit had granted a rehearing *en banc* of the decision. The Court has held the motion for attorney fees in abeyance, pending the outcome of that hearing. See Order dated May 9, 1984. The Court is now informed that oral arguments for the rehearing are scheduled for September 2, 1984, and will no longer delay resolution of plaintiffs' motion.

The issues for the Court's determination are:

1. Are the plaintiffs eligible for costs and attorney fees under the EAJA?
2. If so,
   (a) What amount of fees should they recover?
   (b) What amount of costs should they recover?

## ELIGIBILITY FOR FEES

Section 2412(b) provides that:

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency and any

official of the United States or any agency and any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

In contrast, § 2412(d)(1)(A) provides that: Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

■ Both § 2412(b) and § 2412(d) allow an award of attorney fees to a prevailing party. Although the EAJA does not define "prevailing party," the Eighth Circuit uses the same meaning for the term under the EAJA as it uses under 42 U.S.C. § 1988. *See Premachandra*, 727 F.2d at 720. A plaintiff is a prevailing party under § 1988 if he succeeds on any significant issue in litigation which achieves some of the benefit sought in bringing the suit. *Id.*, citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

There is little doubt that plaintiffs were prevailing parties in this lawsuit, since the Court entered a permanent injunction in their favor.

■ The Eighth Circuit recently held that § 2412(b) authorizes an award of fees against the United States to the same extent that it would be liable for fees under 42 U.S.C. § 1988 if it were a state. *See Premachandra*, 727 F.2d at 724–30. Section 1988 allows fees in cases brought under 42 U.S.C. § 1983 for deprivations of constitutional rights under color of state law. Under *Premachandra* a court may

award attorney fees in cases involving deprivations of constitutional rights under color or of federal law.

Defendants argue that *Premachandra* is incorrect. However, Eighth Circuit precedent is binding on this Court, and the Court will apply *Premachandra's* interpretation of § 2412(b) as it is the existing law of the Circuit.

■ There is no dispute that plaintiffs' case involved claims which were analogous to claims cognizable under 42 U.S.C. § 1983, and that plaintiffs would recover fees under § 1988 if defendants were state officials. Thus, plaintiffs are eligible for fees under § 2412(b).

Defendants contend that a portion of plaintiffs' case, the claim regarding loan deferral under 7 U.S.C. § 1981a, was not analogous to a § 1983 claim. Ordinarily the Court would regard this contention as going to the extent of recovery, not eligibility to recover. However, if plaintiffs cannot recover for the § 1981a claim under § 2412(b), there exists a possibility that they may be able to recover fees relating to it pursuant to § 2412(d). The Court believes it is appropriate to consider defendants' contentions at this point in the analysis.

Defendants argue that the § 1981a claim failed to raise any constitutional issues and was not based on a statute giving rise to an action under 42 U.S.C. § 1983, citing *First National Bank v. Marquette National Bank*, 636 F.2d 195, 198 (8th Cir.1980), *cert. denied*, 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 240 (1981).

The Court disagrees with defendants' argument. Plaintiffs raised statutory claims based on § 1981a, but they also alleged that FmHA's failure to implement § 1981a deferral deprived them of their rights to due process and equal protection. See Docket Nos. 1 and 81, Fifth and Seventh Claims. The due process claim was pursued until the Eighth Circuit decision in *Allison v. Block*, 723 F.2d 631 (1983), required the Secretary of Agriculture to develop standards and procedures for imple-

menting § 1981a. See Docket No. 93 at p. 5. Thus, plaintiffs did raise constitutional claims regarding § 1981a which were analogous to claims allowed by § 1983.

Those constitutional claims were nonfrivolous and substantial even though the § 1981a issue was resolved on statutory grounds. *See* 580 F.Supp. at 201 (following *Allison* ). If this situation existed in a case involving § 1983 claims *and* alternate statutory claims, a prevailing plaintiff would be entitled to a fee award under § 1988 even if the statute could not be the basis for a § 1983 claim. *See Robert M. v. Benton,* 671 F.2d 1104, 1106 (8th Cir.1982); *Monahan v. State of Nebraska,* 687 F.2d 1164, 1172 (8th Cir.1982). The Court sees no need to determine whether a statutory claim based on § 1981a, without the existence of alternate constitutional claims, would have been analogous to a claim under § 1983.

■ Plaintiffs would be eligible for a fee award under § 1988 as to their § 1981a claim if defendants were state officials. Thus, they are eligible for fees as to that claim under § 2412(b).

A prevailing plaintiff ordinarily recovers a fee under § 1988 unless special circumstances would render an award unjust. *See, e.g., Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (Title VII case). The Court finds that an award of attorney fees would be appropriate in this case if it were governed by § 1988, and therefore finds that an award of fees under § 2412(b) is appropriate. It is therefore not necessary to reach the question of whether plaintiffs are eligible for fees under § 2412(d).

### AMOUNT OF FEES RECOVERABLE

The six co-counsel for plaintiffs claim a total of 1,893.2 hours spent on the case, and a total of $186,386.00 in fees based on hourly rates. They seek to increase this amount by 50 percent for Sarah Vogel and 25 percent for each of her co-counsel for a total fee award of $255,989.01. See Appendix, Table 1; cf. Table 2 (adjustments due to arithmetical error).

■ The fees awarded under § 1988, and hence under § 2412(b), should be adequate to attract competent attorneys and yet not produce windfalls. *See Blum v. Stenson,* —— U.S. ——, ——, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984). The starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley,* 103 S.Ct. at 1939. In calculating the number of hours reasonably expended on the litigation and a reasonable hourly rate, a court should take into account the appropriate factors from *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, (5th Cir.1074). *See Blum,* —— U.S. at ——, 104 S.Ct. at 1549; *Hensley* 103 S.Ct. at 1940 n. 9. Then a court may consider whether any other factors justify an increase or decrease in the fee. *See Hensley,* 103 S.Ct. at 1940.

The *Johnson* factors are (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill required to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) the contingency of the fee, (7) time limitations imposed by the client or the circumstance, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorney, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases. *Johnson* at 717–19.

### A. Hourly Rates

■ Plaintiffs' counsel claim hourly rates varying from $75 to $135. A reasonable hourly rate is the prevailing rate for similar work in the community. *See Avalon Cinema Corp. v. Thompson,* 689 F.2d 137, 140 (8th Cir.1982). Defendants object to the rates of $125 and $135 per hour as excessive for North Dakota. Plaintiffs respond that because the case involved a national class, the rates of each attorney's own community should apply. They also

contend that no one in North Dakota had the specialized experience required to adequately assist Ms. Vogel with the suit.

The Eighth Circuit approves the general rule that the relevant community is the district in which the case is tried. *Id.* If a plaintiff can show that he was unable to retain local counsel despite a diligent, good faith effort, other rates may apply. *Id.* And the Court will assume that other circumstances may make rates outside of North Dakota appropriate.

Whatever the merits of plaintiffs' contentions, the Court is faced with a practical problem. Plaintiffs have submitted insufficient information for the Court to make a careful comparison of the claimed rates and rates prevailing outside of North Dakota or in areas of specialization. Even as to North Dakota rates, plaintiffs have provided little background on the experience and type of legal work done by attorneys charging a given rate in North Dakota. Thus, the Court will apply North Dakota rates, drawing on its own experience with North Dakota rates and civil rights awards, where necessary.

It is generally recognized that the prevailing rates in North Dakota range from $50 to $125 per hour. See Docket No. 152; No. 157, A–18, A–21, A–29; No. 158; *see also, Association for Retarded Citizens of North Dakota v. Olson*, 561 F.Supp. 495 (D.N.D.1982), *aff'd*, 713 F.2d 1384, 1394–96 (8th Cir.1983).

As an initial matter, the Court does not find the retention of six attorneys unreasonable, since the state-wide class action was a test case which developed into a national class action. The Court finds that each attorney demonstrated high ability in carrying out his or her particular role in the litigation. They all appear to have excellent reputations.

*Sarah Vogel*[1] claims a rate of $85 per hour, although her affidavits indicate that she actually billed at $75 until February 1984. See Docket No. 121, Attachment 1; Docket No. 157, A–1. Ms. Vogel has practiced law for 13 years, with special emphasis on the state and federal regulation of credit. Before this suit, she assisted co-counsel William S. King with a limited number of class actions on farm issues, but did not have substantial experience with complex federal litigation. She also had no prior trial experience.

Ms. Vogel was lead counsel for the plaintiffs, coordinating the work of the other attorneys, representing plaintiffs at hearings or conferences and the trial in September 1983, and doing a substantial amount of the research and writing. She also handled the daily aspects of the case, such as receiving telephone calls from both the named and national-class plaintiffs.

The Court finds that a reasonable hourly rate for Ms. Vogel's services was $75 until February 1984, and $85 from February 1984 on.

*Burt Neuborne*[2] claims a rate of $125 per hour. He is a professor of constitutional law at New York University Law School and is currently on leave of absence, serving as legal director of the American Civil Liberties Union (ACLU). He has 19 years of experience, primarily in civil rights litigation. His chief role was to assist in preparing the briefs in support of the preliminary injunction, the national class, and the permanent injunction. He also wrote the *amicus curiae* brief submitted in the Allison case on behalf of these plaintiffs, and assisted in setting up procedures for enforcing the preliminary injunction after the national class was certified. He attended the hearings on the preliminary injunction and national class certification, and final arguments on the permanent injunction.

Attorneys from private nonprofit law offices like the ACLU are entitled to reimbursement for their services at the prevailing market rate. *See Blum*, —— U.S. at ——, 104 S.Ct. at 1545–46. The Court finds that $100 per hour is a reasonable rate for Mr. Neuborne's services.

---

**1.** Robert Vogel Law Firm, P.C., Grand Forks, North Dakota.

**2.** New York City, New York.

*Allan Kanner*[3] requests an hourly fee of $135. Mr. Kanner has been practicing law for five years, including a clerkship with a federal district court judge. He has participated in a large number of class actions and is developing a reputation as a specialist in that area. His primary contributions were the brief on state class certification and consultations regarding the national class. He also attended the hearings on the preliminary injunction and national class certification, as well as the final arguments on the permanent injunction.

The Court finds that $135 is an excessive hourly rate for Mr. Kanner's services and that balancing his relatively short period of experience with his specialization, $85 an hour is a reasonable rate.

*William S. King*[4] seeks an hourly rate of $125. He has 26 years of experience, with a significant portion of it in complex federal litigation and federal regulatory practice. Several years before this case commenced, he initiated a number of class action suits against the FmHA. In collaboration with Ms. Vogel, Mr. King drafted a complaint for use in suits involving individual farmers, which was Ms. Vogel's initial strategy against FmHA. A portion of that complaint was incorporated into the original and amended complaints in this case. He also assisted with drafting the original complaint and the brief in support of the preliminary injunction, and attended the hearing on the preliminary injunction and arguments on the permanent injunction.

The Court finds that $100 per hour is a reasonable rate for Mr. King's services.

Mr. King has also billed for the work of three attorneys and a law clerk who functioned as support staff. The Court finds that the reasonable rate for the attorneys is $50 per hour. Law clerk time is generally regarded as a cost which is part of law office overhead and is not recoverable. *See Association of Retarded Citizens*, 561 F.Supp. at 502.

*Dale Reesman*[5] claims an hourly rate of $75. He has practiced law for 25 years and has extensive litigation experience. He has served as counsel in numerous FmHA suits. His major role in the case was developing the factual information for the national class action complaint and assisting with trial preparation following national class certification. He appeared at the hearings on national class certification and the final arguments on the permanent injunction.

The Court finds that $75 per hour is a reasonable rate for Mr. Reesman's services.

*Robert Vogel*[6] requests an hourly rate of $125. He has 42 years of experience as a trial attorney in state and federal courts, and has served as a United States Attorney General for North Dakota and as a Justice for the North Dakota Supreme Court. He is currently a professor at the University of North Dakota Law School and has a private practice. Mr. Vogel provided advice on local practice and assisted at the trial in September 1983. He also attended the hearing on the preliminary injunction, a status conference on management of the state class, and a scheduling conference for the national class action.

The Court finds that $125 per hour is a reasonable rate for Mr. Vogel's services.

The record shows considerable time spent in travel. A court has discretion to award fees for travel time. *See Planned Parenthood Association v. Ashcroft*, 655 F.2d 848, 872 (8th Cir.1981), *aff'd in part, rev'd in part, vacated in part*, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983). The Court deems it appropriate to compensate for travel time at one-half the rate for legal work. Nonlegal work will be reimbursed at the rate of $30 per hour.

All the above hourly rates are similar to the rates awarded in other class action suits to enforce civil rights. *See Blum*, —— U.S. at ——, 104 S.Ct. at 1544; *Association*

---

**3.** Law Offices of Allan Kanner, Philadelphia, Pennsylvania.

**4.** Lipshutz, Frankel, Greenblatt, King & Cohen, Atlanta, Georgia.

**5.** Williams, Reesman & Tate, Boonville, Missouri.

**6.** Robert Vogel Law Firm, Grand Forks, North Dakota.

*of Retarded Citizens v. North Dakota,* 561 F.Supp. at 500, 501; *Rajender v. University of Minnesota,* 546 F.Supp. 158 (D.Minn. 1982); *Bunte Candies v. Cartwright,* 508 F.Supp. 229 (N.D.Calif.1981).

### B. Hours Expended

An applicant for attorney fees must submit adequate documentation supporting the hours worked. *See Hensley,* 103 S.Ct. at 1939. On reviewing the time records submitted, the Court notes the following problems with documentation: For 5–25–83, Ms. Vogel claims 26 hours, and the Court reduces the number of hours to a more reasonable 16 hours. Mr. King has claimed two hours attributable to MLE, with no identification for MLE, and the Court reduces Mr. King's hours accordingly. Some counsel failed to separate travel time from other activities. Where this has occurred, the Court has considered the entire entry to constitute travel time. Otherwise, the Court finds that counsel have submitted adequate documentation.

*Time and Labor Required.* The next step in evaluating the reasonable hours expended on a case is to eliminate those hours which are excessive, redundant or otherwise unnecessary. *See Hensley,* 103 S.Ct. at 1939–40. The focus of this evaluation is whether the hours would be properly billed to one's clients. *Id.* 103 S.Ct. at 1940.

For the most part, the record reflects a number of hours reasonably commensurate with adequate representation and, to a certain extent, the difficulties of managing a test case which swells into a nation-wide class. However, in the court's opinion, the following tasks took excessive amounts of time and require the indicated reductions: (1) Brief in support of preliminary injunction—Ms. Vogel reduced by 5.0, Mr. Neuborne by 10.0, Mr. King by 10.0. (2) Research on the binding effect of the prelimi-

nary injunction immediately upon certification of the national class—Ms. Vogel reduced by 10.0. (3) Brief on the pretermination notice issued by the Secretary on 12–20–83—Ms. Vogel reduced by, 12.0. (4) The September trial—Ms. Vogel reduced by 8.0. (5) Research on the effect of Local Rule 5(c)—Ms. Vogel reduced by 4.0. Attendance at the final arguments on the permanent injunction—Mr. Neuborne reduced by 1.0.

The time records reflect telephone calls with non-co-counsel attorneys and distressed farmers, most of which were directed to Ms. Vogel after the permanent injunction was entered. While the calls might ordinarily be considered an overhead expense, in the circumstances of this case, the Court believes they were reasonably expended on the litigation. Ms. Vogel states that she has listed some, but not all, of the calls she received. See Docket No. 124 at 5. Based on the Court's own experience during the suit, it concludes that Ms. Vogel has not recorded all the calls she must have received. The Court also believes that these calls were reasonably related to enforcement of the preliminary and permanent injunction. Since the hours reported as to these calls are not excessive, all hours for such calls are compensable.

Considering the number of attorneys in the case, there was little duplication of effort, and the Court believes no reduction should be made for duplication.

Defendants object to a total of 207.4 hours as unnecessary or nonproductive. The Court agrees with those objections to the following extent: (1) Dinner with co-counsel, dinner with clients—Ms. Vogel reduced by 2.0. (2) ATLA seminar on class actions [7]—Ms. Vogel reduced by 16.0. (3) Nonbillable calls on 6–7–83, 12–12–83—Ms. Vogel reduced by 0.6. (4) Work on form complaint for individual farmers [8]—Mr.

---

**7.** At the time Ms. Vogel attended this seminar, both she and Mr. King, who had experience in class actions, were working on the suit.

**8.** The purpose of this complaint was to force FmHA to apply *Curry v. Block,* 541 F.Supp. 506 (S.D.Ga.1982), outside Georgia. The complaint resulted from strategizing by Ms. Vogel, Mr.

King and at least one other attorney. Ms. Vogel does not claim any hours connected with it. This complaint obviously formed the basis for the equal protection claim in the original and amended complaints in this case, and the Court concludes that Mr. King is entitled to some reimbursement for his efforts. *But cf. Langdon v. Drew Mun. Separate School Dist.,* 512 F.Supp.

King reduced by 17.9, Mr. Greenblatt by 0.5, Mr. Arne by 0.25. (5) Work not related to state-class action on 8–21–81[9]—Mr. King reduced by 5.2.

The Court disagrees with the other objections made by defendants on grounds of irrelevancy or nonproductivity. The objections were to: (1) Gathering statistics and other data on the current economic situation of farmers and preparing an affidavit for Scot Stradley. Defendants challenged the named plaintiffs' entitlement to § 1981a deferral on the grounds that their economic problems were due to poor management, rather than circumstances beyond their control. Plaintiffs sought economic information to meet that argument, and although the Court never relied on the information, it cannot say the statistics were unnecessary to preparation of the case.

(2) Writing an *amicus* brief and appearing at oral arguments in the Allison case at the Eighth Circuit. The Allison case was crucial to plaintiffs prevailing on the § 1981a issue in this case. Counsel represented to the Eighth Circuit that they appeared on behalf of these plaintiffs. See Docket No. 157, attachment to A–12. Under these circumstances, plaintiffs are entitled to recover fees for the *amicus* representation. *See DeMier v. Gondles,* 676 F.2d 92 (4th Cir.1982); *Bartholomew v. Watson,* 665 F.2d 910 (9th Cir.1982); *Pinshaw v. Monk,* 565 F.Supp. 44 (D.Mass. 1983).

(3) Reviewing the pretermination notice and temporary procedures issued by FmHA on 12–20–83 and preparing a brief criticizing them, which included the affidavit of Elizabeth Hampsten, an English professor, evaluating the notice's readability. The Court finds this work was reasonably necessary to enforcement of the preliminary injunction.

(4) Research on the Freedom of Information Act and Privacy Act when the North Dakota branch of FmHA refused to release the records of class members. The Court finds that this work was reasonably related to enforcement of the preliminary injunction. ·

The Court has also identified a number of tasks which were nonlegal and makes the following adjustments: Ms. Vogel reduced by 3.2 for delegable tasks (2–11–83, 3–5–83, 3–8–83 (estimated), 3–11–83, 3–16–83 (estimated), 3–21–83, 3–25–83, 8–5–83), 3.2 to be billed as nonlegal (2–2–83, 9–2–83, 1–7–84); Mr. King, reduced by 1.0 for delegable tasks (1–26–83, estimated).

*Lodestar Figure.* Taking the above adjustments into account, the "lodestar" figures for counsel are:

| S. Vogel | | |
|---|---|---|
| Legal | 935.6 X $75.00 | 70,170.00 |
| Legal | 62.3 X $85.00 | 5,295.50 |
| Travel | 74.0 X $37.50 | 2,775.00 |
| Nonlegal | 3.2 X $30.00 | 96.00 |
| | | $78,336.50 |
| | | |
| Neuborne | | |
| Legal | 222.5 X $100.00 | $22,250.00 |
| | | |
| Kanner | | |
| Legal | 129.0 X $85.00 | 10,965.00 |
| Travel | 41.0 X $42.50 | 1,742.50 |
| | | $12,707.50 |
| | | |
| King | | |
| Legal | 123.4 X $100.00 | 12,340.00 |
| Travel | 22.0 X $ 50.00 | 1,100.00 |
| | | $13,440.00 |
| | | |
| MSB | 5.40 X $50.00 | 270.00 |
| ELG | .25 X $50.00 | 12.50 |
| PA | .50 X $50.00 | 25.00 |
| | | $307.50 |
| | | |
| Reesman | | |
| Legal | 80.35 X $75.00 | 6,026.25 |
| Travel | 22.80 X $37.50 | 855.00 |
| | | $6,881.25 |
| | | |
| R. Vogel | | |
| Legal | 10.2 X $125.00 | 1,275.00 |
| Travel | 42.0 X $ 62.50 | 2,625.00 |
| | | $3,900.00 |

The total "lodestar" figure for all counsel is $137,822.75.

### C. *Factors Requiring Adjustment of Lodestar*

*Results Obtained.* Defendants contend that the hours spent on certain issues should be reduced or eliminated because plaintiffs failed to prevail on them. Specifically, defendants refer to the § 1981a claim, and the due process claim regarding

---

1131 (N.D.Miss.1981). The Court reduces the hours reported by one-half.

**9.** See Docket No. 123 at 7.

FmHA administrative hearings and appeals, which included contentions that the current hearing examiners are biased, that administrative law judges should sit as hearing examiners, and that the Administrative Procedures Act, 5 U.S.C. § 551, governs such proceedings.

The Court agrees that plaintiffs did not succeed on all their claims. When a plaintiff achieves only partial or limited success, a court must focus on the work expended on the successful claims and on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. *See Rosebrough Monument Co. v. Memorial Park Cemetary Association,* 736 F.2d 441, 446 (8th Cir., 1984), citing *Hensley,* 103 S.Ct. at 1940.

The purpose of this suit was to help farmers keep their farm operations despite attempts by FmHA to liquidate. The relief that was most important to carrying out that purpose was given on two claims: the § 1981a claim and the claim for notice and a hearing before FmHA terminates allowances for operating and living expenses or takes any steps to liquidate collateral. The preliminary and permanent injunctions on these claims gave farmers a chance to request additional relief and contest loan servicing decisions *before* the FmHA takes any action which seriously threatens the farmers' ability to stay on their farms or challenge the decision.

Despite defendants' contentions, there is little doubt that plaintiffs fully succeeded on the substance of their § 1981a claim.

On the other hand, plaintiffs did not fully prevail on the due process issues regarding the hearings and appeals. Plaintiffs sought to ensure that these FmHA proceedings were held before impartial decision-makers. While the Court did not adopt plaintiffs' remedies for the situation, it did require that all hearing examiners be persons who were not involved in making the initial decision which was under review. The Secretary went beyond this requirement in the temporary procedures issued on 12–20–83. By raising the issue, plaintiffs have been a catalyst for change.

The remaining due process issues on hearing and appeal procedures were the least significant issues raised in the suit. Little time was spent on them.

The Court finds that the overall results obtained were excellent, particularly given the large number of farmers who will benefit from the suit. The district court in the *Hensley* case was faced with a similar situation. There plaintiffs pursued three main claims, of which one was settled by consent decree, one became moot, and one went to trial. The claim that was tried raised six specific issues. Plaintiffs prevailed on five of the six issues, but the court found that the relief obtained was substantial, justifying compensation for all the hours reasonably expended on the litigation as a whole. The Supreme Court approved of the district court's approach to determining fees for partial success. *See Hensley,* 103 S.Ct. at 1941–42.

This Court finds that if the total number of hours expended related to the successful issues only, they would be reasonable. Thus, plaintiffs should be fully compensated for reasonable fees for the litigation as a whole.[10]

*Skills Required.* The special skills required for this case were those related to developing, organizing and managing a large class action with members scattered nation-wide.

*Complexity and Novelty.* Problems of case management were complex, but otherwise the case presented no notable complexity or novelty.

*Quality.* The quality of representation was excellent.

*Nature of Professional Relationship.* Counsel represented a large number of

---

10. Defendants argue that plaintiffs were also unsuccessful in their efforts to hold defendants in contempt and to have the Court act on their analysis of defendants' proposal for implementing the preliminary injunction in spring 1983. Even though the Court did not hold defendants in contempt, these efforts did hasten FmHA's compliance with the preliminary injunction. The Court finds that a reduction in the hours spent on these efforts would be inappropriate.

people who had to be informed of the preliminary injunction. Some class members consulted counsel on their individual cases, often needing immediate assistance. Counsel used the ACLU as a resource to obtain assistance for these people and to set up enforcement procedures.

Based on the Court's evaluation of the above factors, the Court concludes that the "lodestar" figures are reasonable compensation without any adjustment.

### D. Requested Multipliers

Plaintiffs request a multiplier for each counsel because of high quality representation, excellent results and high risk. The product of a reasonable number of hours multiplied by a reasonable rate is presumed to be a reasonable rate. *See Blum,* —— U.S. at ——, 104 S.Ct. at 1548. Normally, quality and results obtained should be factors subsumed in the factors used to calculate a reasonable fee. *Id.* at ——, 104 S.Ct. at 1550. In this case, the "lodestar" figures already reflect the Court's evaluation of quality and results obtained.

High risk traditionally has been considered a factor which may justify use of a multiplier. *See, e.g., Jorstad v. IDS Realty Trust,* 643 F.2d 1305 (8th Cir.1981) (securities fraud case); *Cleverly v. Western Electric Co.,* 594 F.2d 638 (8th Cir.), *aff'g,* 450 F.Supp. 507 (W.D.Mo.1978) (ADEA case); *DiSalvo v. Chamber of Commerce,* 568 F.2d 593, 599 (8th Cir.1978) (Title VII case); *cf., Blum,* —— U.S. at ——, 104 S.Ct. at 1550 n. 17 (it is an open question whether the risk of non-payment may justify an upward fee adjustment).

■ Factors which courts use to evaluate the degree of risk in a case include: (1) the likelihood that plaintiff would prevail, (2) the number of hours of labor risked

without guarantee of remuneration, and (3) delay in payment. *See, Vickerman v. Hennepin County Probate Court,* 543 F.Supp. 165, 171–72 (D.Minn.1982).

Counsel took this case on the understanding that plaintiffs would pay litigation expenses if they lost, and that the only fee they would receive would be a fee award, if any, under the EAJA.

Whatever plaintiffs' likelihood of success was at the beginning of the case, it improved when the preliminary injunction issued. However, the risk of nonpayment was still high, because counsels' fees depended on this Court's interpretation of § 2412(b)[11] and its determination under § 2412(d) whether the government's position in this suit was substantially justified.

Ms. Vogel worked full-time on the case and took few, if any, other cases. The Robert Vogel Law Firm (owned by Robert Vogel) had two members at the beginning of the suit, Ms. Vogel and Mr. Vogel. It currently has three attorneys. The Firm has paid Ms. Vogel's salary, overhead and benefits during the suit, as well as some expenses of the litigation, which has been a drain on the Firm's resources and has caused cash flow problems. See Docket Nos. 163 and 164.

The only reimbursement Ms. Vogel has received for nearly a year's worth of billable hours is $30,000, in the form of two grants from the J. Roderick MacArthur Foundation.[12] These grants were used to pay expenses as they occurred.

Many attorneys have stated they would have found the case undesirable, and although they do not state why, it appears that the risk of no compensation and the extreme amount of time involved were important factors in its undesirability.

The Court concludes that a multiplier of 30% for high risk is appropriate for Ms.

---

**11.** Until February 9, 1984, no Circuit Court had determined whether § 2412(b) was intended to authorize fee awards against the United States when it loses a civil rights suit. *See Premachandra,* 727 F.2d at 725. District courts were split on the issue. *Id.*

**12.** The grants must be repaid if plaintiffs receive a fee award under the EAJA. Defendants argue

that Ms. Vogel's fees should be reduced by the amount of the grant. This argument is without merit since "specific fund-raising activities by an organization representing civil rights attorneys are irrelevant" to a fee award under 42 U.S.C. § 1988. *See McLean v. Arkansas Board of Education,* 723 F.2d 45, 49 (8th Cir.1984).

Vogel, and a multiplier of 20% is appropriate for Robert Vogel as the owner of the Robert Vogel Law Firm. A multiplier is not justified for the remaining counsel.

The multipliers increase Ms. Vogel's fees to $101,837.45, and Mr. Vogel's to $4,680.00. The total award for all attorneys is $162,103.70.

## AMOUNT OF COSTS RECOVERABLE

Plaintiffs seek reimbursement for a total of $18,109.19 in costs. See Appendix, Table 1; cf. Table 2. Costs are allowed as claimed except for the following reductions. S. Vogel—(1) Expenses of attending the ATLA seminar on class actions, disallowed, (2) Cost of law clerk research, disallowed, (3) Estimated postage which was not considered billable at the time incurred—reduction of $225.00.

The net costs allowed are $17,278.30.

## ORDER

For the above reasons, IT IS ORDERED: That plaintiffs shall have judgment against defendants for attorney fees, costs and disbursements in the amount of $179,382.00. The Clerk shall enter judgment accordingly.

## APPENDIX

### TABLE 1

COSTS AND FEES AS SUBMITTED BY PLAINTIFFS

| Attorney | Hours | Reg. Rate | Total Fees | Multiplier | Requested Fees | Costs |
|---|---|---|---|---|---|---|
| S. Vogel | 1,135.6 | $ 85.00 | $ 96,526.00 | 1.50 | $144,789.00 | $ 12,362.20 840.00 |
| Neuborne | 232.5 | 125.00 | 29,062.50 | 1.25 | 36,328.13 | 0 |
| Kanner | 171.0 | 135.00 | 23,085.00 | 1.25 | 28,856.25 | 2,435.75 |
| King | 181.5 | 125.00 | 22,687.50 | 1.25 | 28,359.38 | 873.74 |
| MSB | 5.4 | 75.00 | 405.00 | | | |
| ELG | 1.0 | 125.00 | 125.00 | | | |
| PA | .5 | 50.00 | 25.00 | | | |
| L. Clerk | 11.5 | 30.00 | 345.00 | | | |
| Reesman | 103.0 | 75.00 | 7,725.00 | 1.25 | 9,656.25 | 1,322.50 |
| R. Vogel | 51.2 | 125.00 | 6,400.00 | 1.25 | 8,000.00 | 275.00 |
| | 1,893.2 | | $ 186,386.00 | | $255,989.01 | $ 18,109.19 |

### TABLE 2

COSTS AND FEES AS SUBMITTED BY PLAINTIFFS
(Corrected for Arithmetical Errors)

| Attorney | Hours | Reg. Rate | Total Fees | Multiplier | Requested Fees | Costs |
|---|---|---|---|---|---|---|
| S. Vogel | 1,145.9 | $ 85.00 | $ 97,401.50 | 1.50 | $146,102.25 | $ 12,479.54 840.00 |
| Neuborne | 233.5 | 125.00 | 29,187.50 | 1.25 | 36,484.38 | 0 |
| Kanner | 170.0 | 135.00 | 22,950.00 | 1.25 | 28,687.50 | 2,435.92 |
| King | 181.5 | 125.00 | 22,687.50 | 1.25 | 28,359.38 | 873.74 |
| MSB | 5.4 | 75.00 | 405.00 | | | |
| ELG | 1.0 | 125.00 | 125.00 | | | |
| PA | .5 | 50.00 | 25.00 | | | |
| L. Clerk | 11.5 | 30.00 | 345.00 | | | |
| Reesman | 103.15 | 75.00 | 7,736.25 | 1.25 | 9,670.31 | 1,322.50 |
| R. Vogel | 52.2 | 125.00 | 6,525.00 | 1.25 | 8,156.25 | 275.00 |
| | 1904.65 | | $ 187,387.75 | | $257,460.07 | $ 18,226.70 |